CANNADAY v. RAILROAD.

(Filed December 22, 1906).

*Contracts—Lex Loci Contractus—Exceptions to Doctrine— Relief Department—Acceptance of Benefits, Effect of— Comity.*

1. Matters bearing upon the execution, interpretation and validity of a contract are determined by the law of the place where it is made.

2. The exceptions to this general doctrine are: (1) When the contract in question is contrary to good morals; (2) when the State of the forum, or its citizens, would be injured by its enforcement; (3) when the contract violates the positive legislation of the State of the forum, and (4) when it violates its public policy.

3. Where the plaintiff, an employee of the defendant, entered into a contract in South Carolina, pursuant to which he became a member of its Relief Department, by which he agreed that the acceptance by him of benefits for injuries sustained should operate as a release and satisfaction of all claims against defendant growing out of said injuries, and the contract of employment was made in South Carolina, and the plaintiff was injured in that State by defendant's negligence, and accepted and received benefits under the provisions

of the contract in said State, and where the courts of South Carolina have interpreted the contract as an agreement to elect in event of injury either to accept the benefits and release the defendant or waive the benefits and sue on the cause of action, and that his election to receive the benefits was a release of his cause of action for negligence: *Held,* that this interpretation is binding upon this Court, and the plaintiff, having no cause of action in South Carolina, has none in this State.

CLARK, C. J., dissenting.

ACTION by James A. Cannaday against Atlantic Coast Line Railroad Company, heard by *Judge G. S. Ferguson* and a jury, at the June Term, 1906, of the Superior Court of GUILFORD.

This was an action for the recovery of damages for personal injury. The facts material to the decision of the appeal were as follows: The jury found upon issues submitted to them that the plaintiff was injured by the negligence of the defendant, and that he did not, by his own negligence, contribute thereto. By way of further defense, defendant alleged that prior to his employment, plaintiff entered into a contract pursuant to which he became a member of the Relief Department, an organization formed by the several companies constituting the Atlantic Coast Line Railroad Company for the purpose of establishing and managing a fund for the payment of definite amounts to the employees contributing thereto, entitling them when disabled by accident or sickness, or their families in case of death, to certain amounts, the basis of which was fixed in said contracts. The said contract is set out in full, and among other provisions, contains the following: "I also agree that, in consideration of the amounts paid and to be paid by said company for the maintenance of said Relief Department, and of the guarantee by said company of the payment of said benefits, the acceptance by me of benefits for injury shall operate as a release and satisfaction of all claims against said company, and all other companies

associated therewith in the administration of their Relief Department, for damages arising from or growing out of said injury; and further, in the event of my death, no part of said death benefit or unpaid disability benefit shall be due or payable unless and until good and sufficient releases shall be delivered to the superintendent of said Relief Department of all claims against said Relief Department, as well as against said company, and all other companies associated therewith as aforesaid, arising from or growing out of my death, said releases having been duly executed by all who might legally assert such claims; and further, if any suit shall be brought against said company or any other company associated therewith as aforesaid, for damages arising from or growing out of injury or death occurring to me, the benefits otherwise payable, and all obligations of said Relief Department and of said company created by my membership in said Relief Fund, shall thereupon be forfeited without any declaration or other act by said Relief Department or said company." It was further alleged that after the injuries sustained, plaintiff received benefits pursuant to the said contract, evidence of which was set out in the record. Upon this defense, the following issues were submitted to and found by the jury:

"Was the plaintiff, at the time of his alleged injury, a member of the Relief Department of the Atlantic Coast Line Railroad Company in South Carolina, and did he agree to be bound by the rules and regulations of said Relief Department? Ans. Yes."

"Did the plaintiff, after his injury, and before the bringing of this action, accept and receive benefits from said Relief Department for said injury? Ans. Yes."

It is admitted that the contract of employment was made in South Carolina, and that the contract, by which plaintiff became a member of the Relief Department, was also made

in said State. That the service into which plaintiff entered was "as engineer to run an engine and train of cars from Florence in said State to Augusta in the State of Georgia." That the injury for which the action is brought occurred in the State of South Carolina, and that the acceptance of benefits under the provisions of the contract as found by the jury was in said State. There was judgment for plaintiff upon the verdict, and defendant appealed.

Z. V. Taylor and E. J. Justice for the plaintiff.
Rose & Son and King & Kimball for the defendant.

CONNOR, J., after stating the case: It is settled that "Matters bearing upon 'the execution, interpretation and validity of a contract are determined by the law of the place where it is made." Scudder v. Nat. Union Bank, 19 U. S., 406. "The interpretation of a contract and the rights and obligations under it, of the parties thereto, are to be determined in accordance with the proper law of the contract. Prima facie the proper law of the contract is to be presumed to be the law of the country where it is made." Dicey Conft. Law, 563. Bowen, L. J., in Jacobs v. Credit Lyonnais, 12 Q. B., 589, says: "It is generally agreed that the law of the place where the contract is made is prima facie that which the parties intended, or ought to be presumed to have adopted, as the footing upon which they dealt, and that such law ought, therefore, to prevail in the absence of circumstances indicating a different intention." 9 Cyc., 667.

The principle is illustrated in Bridger v. Asheville, etc., Railroad Co., 27 S. C., 456 (13 Am. St. Rep., 653). The action was for injuries alleged to have been sustained in North Carolina by the negligence of defendant. The defense of contributory negligence being pleaded, the question was whether, as held by the courts of this State, the age of the plaintiff precluded the defendant from relying upon it, and

the decision of this question was made to depend upon the decisions of the courts in North Carolina. *Simpson, C. J.,* said: "The injury was inflicted there, and if the parties had remained in that State and brought action there, they would have been compelled to stand or fall by the law there. And we cannot see, upon principle, how stepping over the line could give the plaintiff a new and altogether enlarged cause of action—in fact, a cause of action which he did not have before, and, therefore, which he could not have enforced in the tribunals having jurisdiction of the matter at its origin. * * * In such case, the plaintiff having no cause of action in North Carolina, where the injury was inflicted, he could have none here."

The principle has been recognized and enforced by this Court in *Watson v. Orr,* 14 N. C., 661; *Anderson v. Doak,* 32 N. C., 295; *Williams v. Carr,* 80 N. C., 294; *Hancock v. Tel. Co.,* 137 N. C., 497; *Hall v. Tel. Co.,* 139 N. C., 369.

The exceptions to the general rule are thus stated by Mr. Lawson, the editor of the excellent and exhaustive article on "Contracts," in 9 Cyc., 674: "The general doctrine that a contract, valid when it is made, is valid also in the courts of any other country or State, when it is sought to be enforced, even though had it been in the latter country or State, it would be illegal and hence unenforcible, is subject to several exceptions: (1) When the contract in question is contrary to good morals; (2) when the State of the forum, or its citizens, would be injured by the enforcement by its courts of contracts of the kind in question; (3) when the contract violates the positive legislation of the State of the forum, that is, is contrary to its Constitution or statutes, and (4) when the contract violates the public policy of the State of the forum. These exceptions are grounded on the principle that the rule of comity is not a right of any State or country, but is permitted and accepted by all civilized communities

from mutual interest and convenience, and from a sense of the inconvenience which would otherwise result, and from moral necessity to do justice in order that justice may be done in return." Note 49; *Gooch v. Faucett,* 122 N. C., 270 (39 L. R. A., 835).

We are thus brought to a consideration of the question whether the courts of South Carolina have interpreted the contract and passed upon the effect, upon his cause of action, of the election made by the plaintiff to accept benefits from the Relief Department by reason of his injuries. This inquiry invites an examination of two questions: First, does the contract, as interpreted by the courts of South Carolina, undertake to release the defendant in advance from all claim or demand for injury sustained by reason of its negligence? Or, second, is it an agreement to elect, in the event of such injury, either to accept the benefits provided by the contract and release the company, or waive the benefit and sue on the cause of action? If the first be the proper interpretation of the contract, the question would arise whether it is not within one of the exceptions to the general rule of comity as stated by Mr. Lawson. If the second is the correct view, no such question can arise. The answer, of course, is dependent not upon the interpretation which we would put upon it, but what interpretation the courts of South Carolina have put upon the contract.

The defendant relies upon the case of *Johnson v. Railroad,* 55 S. C., 152 (44 L. R. A., 645). The plaintiff insists that, by reason of the course which that case took in the courts of South Carolina, the final result did not "become the law of the State, but merely of that case." This contention renders it necessary for us to notice the history of the case.

The action was brought by the plaintiff, an employee, for the purpose of recovering damages for injuries sustained by the alleged negligence of the defendant. In addition to de-

nial of liability on the alleged cause of action, the defendant by way of special defense set up a contract in all respects as the one before us, alleging the receipt of benefits under it and release from all claim or demand for damages. The plaintiff demurred orally to the "second affirmative defense," assigning as grounds of demurrer that the contract set out therein "was contrary to law and against public policy, and a release thereunder cannot be pleaded as a defense to an action for damages caused by the defendant's negligence." The demurrer was overruled by *Judge Watts,* Circuit Judge, who said: "There is no question in my mind that a contract of this kind, whereby a railroad company attempts to relieve itself of any liability on account of negligence, is contrary to public policy, and when the party enters into the contract beforehand, he would not be estopped from bringing his action for damages against the railroad company. It seems in this case that the plaintiff had entered into that agreement, relieving the railroad company, before he was injured. After he was injured, he was put to his election as to whether he would sue the company or go ahead and carry out the contract, and receive the benefits of that contract. It seems to me that the decision in the case of *Price v. Railroad Co.* would control in this case, and I think the plaintiff, having elected to receive the benefits under that contract, is now estopped from bringing his action against the railroad company." The basis of his Honor's judgment overruling the demurrer becomes material because of the subsequent course which the case took. The plaintiff appealed, stating five separate exceptions to the judgment. It is not necessary to set them out here. The Supreme Court of South Carolina consists of a Chief Justice and three Associates. To provide for the contingency arising when, upon appeal, the Justices were equally divided in opinion, it is declared by section 12, Article V, of the Constitution, that the concurrence

CANNADAY *v.* RAILROAD.

of three of the Justices shall be necessary to a reversal of the judgment below. Provision is made for the decision in such contingency when a constitutional question is involved, by which the Circuit Judges are called to the assistance of the Justices in the decision of such question. In *Johnson's case, supra,* the Justices were equally divided. *Mr. Justice Pope,* writing an opinion concurred in by *Mr. Justice Gary,* for reversal of the judgment. *Chief Justice McIver,* writing an opinion referred to as "dissenting," concurred in by *Mr. Justice Jones,* for affirming.

In this condition of the case it is held by a unanimous Court in *City of Florence v. Berry,* 62 S. C., 469, that when "a judgment is affirmed by a divided Court, such a judgment must be regarded as a judgment of the Supreme Court, and as such is binding authority in all subsequent cases, until it is overruled by competent authority." In view of the rule of comity, therefore, the interpretation and validity of the contract must be treated by us as settled by the courts of South Carolina. The principle announced by *Simpson, C. J.,* in *Bridger v. Railroad, supra,* applies with peculiar force. The plaintiff had no cause of action in South Carolina, and therefore has none here. Merely crossing the State line cannot enlarge or give a cause of action which he did not have in the State whence he came. Every fact and circumstance affecting the cause of action occurred in South Carolina.

This is conclusive of the appeal unless, as contended by the plaintiff's counsel, the form of the pleading presents the question whether the defendant is seeking to use, not as a shield, but as a weapon, a contract which violates the settled policy of this State, or is prohibited by our Employer's Liability Act. Revisal, sec. 2646. The plaintiff's view is that he has established by the verdict of the jury a cause of action for an injury sustained by reason of the defendant's negligence, upon which he would recover but for the affirmative

defense, relied on by the defendant, which, being executory, this Court is asked to specifically enforce. That, in respect to the contract, the defendant is the actor demanding affirmative relief. We do not concur in this view. Whatever may have been the character of the contract prior to the execution of the release by the plaintiff, by that act the cause of action was released for all legal and practical purposes, and extinguished.

In the courts of South Carolina the defendant pleads release by way of affirmative defense, and not as a counterclaim or cross-action. It is as if it had pleaded payment or accord and satisfaction, by which it avers that the plaintiff had at the time of bringing the suit no cause of action. This was the status of the matter in South Carolina, and it is in no respect different here. Did the Court in South Carolina enforce the original contract, holding it not to be against public policy, or did it so interpret it that no release of a cause of action for negligence was affected by the contract, but that the release executed after the injury, in consideration of benefits received, operated to extinguish the cause of action?

While there is apparently some divergence of view between the learned Justices who wrote opinions in *Johnson's case*, the prevailing opinion by the then *Chief Justice*, although called in the reports of the case "dissenting," clearly indicates that the decision, following the language used by *Judge Watts*, is put upon the interpretation of the contract. The *Chief Justice* says: "In the outset I desire to say what would seem to be needless, but for the fact that it appears to have been thought necessary to expend much time and labor upon the point, that I do not suppose any one doubts that a contract, whereby a railroad corporation or any other common carrier undertakes to secure immunity from liability for damages resulting from the negligence of the carrier

or any of its servants or agents, is contrary to public policy, and therefore void. But the question here is whether the contract or arrangements set up in the affirmative defense is a contract for immunity from damages. I do not think it can be so regarded, for, on the contrary, the very terms of the contract necessarily assumed that the defendant is liable, and the whole scope and effect of the contract is to fix the measure of such liability and the manner in which such liability shall be satisfied." The learned *Chief Justice* proceeds to quote from a case decided by the Supreme Court of Pennsylvania, "He is not agreeing to exempt the company from liability for negligence, but accepting compensation for an injury already caused thereby." *Johnson v. Railroad,* 163 Pa. St., 127. He then proceeds to analyze the terms of the contract, setting forth clearly and forcibly his interpretation of it.

We have no doubt that the decision is based upon two propositions: (1) That a contract made in advance to exempt a railroad company from liability for its negligence is contrary to public policy and void. It is so, independent of the constitutional provision in South Carolina, or our statute, which is in almost the same terms. *Harrill v. Railroad,* 135 N. C., 601. (2) That the contract as interpreted by the Court does not have that effect. The case was heard before the special tribunal provided by the Constitution of South Carolina upon the suggestion that a constitutional question was involved. By a *per curiam* opinion, the judgment was affirmed for the reason that no constitutional question was presented. This view relieves us from considering the other branch of the controversy.

It is conceded that the courts which have passed upon this form of contract have almost uniformly sustained it, upon the ground stated by *Judge McIver.*

In deciding this appeal, we do not express any opinion upon the question, except to say that we fully concur in the opinion that a contract to exempt a railroad company from liability for negligence is void. We have uniformly and frequently so held. The question as to the interpretation of this contract, when, if ever, presented to this Court in a manner making it our duty to pass upon it, will be approached as an open question. We are informed that the question has been removed from the sphere of litigation by legislation in South Carolina. By the Act of Congress, the contract or acceptance of benefits under it is declared not to be a bar to an action for damages. It may not be improper to say that the contract does not commend itself to our judgment. In this case it appears that the plaintiff paid into the Relief Department $72 and received by way of benefits $68.

We must in obedience to the well-settled law of comity declare that the plaintiff, having no cause of action in South Carolina, has none in this forum. The judgment must be reversed, and judgment upon the verdict be entered for the defendant.

Reversed.

CLARK, C. J., dissenting: It is established by the verdict in this case that the defendant was guilty of negligence in allowing a collision of two trains in South Carolina, resulting in injuries to plaintiff causing damages to him to the amount of $1,800, and that he was not guilty of contributory negligence. There is no exception calling in question the correctness of the trial in these respects. The defendant relies upon a discharge or release by reason of benefits received from the "Atlantic Coast Line Relief Department."

When the action is upon a contract made or a tort committed in another State, the laws of that State must be taken into

143—29

consideration in passing upon the liability of the defendant. But when liability is established without question, as in this case, the matter of a discharge, whether by payment, release or statute of limitations, is governed by the *lex fori,* the law of the place where the case is tried and where such defense is to be allowed or disallowed. If a contract made in North Carolina, on which the statute of limitations is three years, is sued on in New York, where the limitation upon that class of contracts is six years, the defense is governed by the latter limitation, and *vice versa,* when a suit is brought in this State on a cause of action accruing in New York. In the same way, if the plea of payment or release is one which cannot be sustained in good conscience or is against the public policy of the State where the case is tried, the courts thereof will not hold it a valid defense to defeat a valid liability which the defendant has incurred elsewhere.

The release here set up is by virtue of a transaction by which the plaintiff, who has paid in $72, has received back $68, and the defendant is insisting that that is a release of a liability for $1,800 damages legally ascertained, which the plaintiff has sustained by the wrongful act of the defendant. Such a defense is not good in *foro conscientiæ,* and in that matter the courts here are to be governed by their own rules of equity. There has been no consideration for the release, and such being the case, the Judge properly entered judgment in favor of the plaintiff upon the verdict.

It is strenuously argued by the able and learned counsel for the plaintiff that the "Atlantic Coast Line Relief Department" is an ingeniously devised plan to cause the employees of that company, at their own expense and by means of deductions from their wages, to insure the railroad company from liability for injuries sustained in its service, notwithstanding the provisions of the Fellow-servant Act, now Revisal, 2646. It is not necessary to go into that matter, as

it is apparent that there was no consideration for the release here set up. But the act in question affects a most meritorious class of our citizens, engaged in hazardous *quasi*-public service. They are deeply and vitally interested that judicial construction shall in nowise impair the just protection afforded them by that section, and especially by the last paragraph thereof: "Any contract or agreement, expressed or implied, made by any employee of such company to waive the benefit of this section, shall be null and void."