Paul E. KLINE, Plaintiff,

v.

Margaret O. McCORKLE et al.,
Defendants.

Civ. A. No. 19–70–NN.

United States District Court,
E. D. Virginia,
Newport News Division.

Aug. 31, 1971.

Larry M. Topping, Newport News, Va., for plaintiff.

Daniel W. Wilkinson, Jr. and Bennett L. Stein, Newport News, Va., for McCorkle.

John W. Winston, Norfolk, Va., for Wheels by Kinney, Inc. and Kinney National Services, Inc.

MEMORANDUM

WALTER E. HOFFMAN, Chief Judge.

This is a tort action brought by the plaintiff, Paul E. Kline, against Margaret O. McCorkle and Wheels By Kinney, Inc. and Kinney National Services, Inc., defendants. Wheels By Kinney, Inc. and Kinney National Services, Inc., are hereafter referred to as Kinney. Federal jurisdiction in this case is based upon diversity of citizenship and the amount in controversy. The complaint was filed in the United States District Court for the Eastern District of North Carolina, Elizabeth City Division. The case was then transferred to the United States District Court for the Eastern District of Virginia, Newport News Division, for reasons of convenience of witnesses and the ends of justice, pursuant to 28 U.S.C.A. § 1404(a).

The facts are not in dispute. Margaret McCorkle, a citizen and resident of New York, rented an automobile from Kinney in New York. There were no limitations as to where the automobile could be taken.[1] During the period of the lease agreement—one month—the leasing company was bound by the New York Vehicle and Traffic Law, McKinney's Consol.Laws, c. 71, § 388(1) (McKinney 1970), which provides as follows:

"Every owner of a vehicle used or operated in this state shall be liable and responsible for death or injuries to persons or property resulting from negligence in the use or operation of such vehicle, in the business of such owner or otherwise, by any person using or operating the same with the permission, express or implied, of such owner."

McCorkle drove the car to Nags Head, North Carolina, on a pleasure trip. On the night of August 24, 1968, Miss McCorkle was proceeding south on Highway 158 By-Pass at Nags Head. At the time of the accident Kline, the plaintiff, was assisting a companion who had gotton his car stuck in the sand on the right-hand shoulder of the southbound lane while trying to parallel park between two other cars. The car was on a slight angle with the left rear of the car protruding 12 inches onto the highway. Kline turned on the tail lights and left blinker light, and then went to the rear of the car to operate the jack. He was struck by the Kinney automobile driven by McCorkle while he was bending over assembling the jack. Kline testified that at all times his feet remained off of the hard surface of the highway, although a portion of his body was apparently protruding over the highway when he was struck. As a result of the accident the plaintiff suffered serious and permanent injuries which are the basis of this action. The jury returned a verdict in favor of Kline for $52,500.00 against all defendants.[2] Defendant

---

1. There are, however, certain restrictions, limitations and relationships set forth in the lease agreement between McCorkle and Kinney. Without suggesting the validity or invalidity of any such provisions, it should be noted that (1) McCorkle agreed that under no circumstances shall the vehicle be operated "in violation of good driving practices;" (2) the lease agreement specifies that "Vehicle and Customer are covered with an automobile liability insurance policy covering bodily injury and property damage in combined single limits of $1,000,000 per occurrence;" (3) McCorkle agreed, "except to the extent of any specific undertaking of Kinney or of any insurance required to be furnished by Kinney under this Rental Agreement" to indemnify and hold Kinney "harmless from any and all claims for injuries to persons," etc.; and (4) McCorkle, as the customer, "shall in no event be or be deemed to be the agent of Kinney." One need only read the "fine print" of this agreement to arrive at the conclusion that McCorkle, if required to sue on the policy, will be confronted with her "violation of good driving practices" in that she has been found guilty of negligence. For reasons mentioned in the opinion, we think that there is ample reason to apply the New York statute and to consider this action on a contract basis from the standpoint of the plaintiff as well.

2. The Court, faced with the New York statute and without opportunity to research the law, charged the jury that if

Kinney then moved to have the verdict set aside and have judgment entered in Kinney's favor. Defendant McCorkle asserted that the pleading and evidence did not bring the plaintiff's claim within the purview of the last clear chance doctrine, and that her assignments of error ought to be sustained on that ground.

The motion by Kinney to have the verdict set aside raises a question of confict of laws. The Court has a choice of which law to apply to this situation —New York law or North Carolina law. Under the North Carolina law, to hold Kinney liable for McCorkle's negligence in a tort action, a proof of agency is required. McCorkle was not an agent of Kinney while operating the automobile. Under the New York law, Kinney is liable for McCorkle's negligence just by the fact that McCorkle was operating the automobile with Kinney's permission.

▇▇▇ We are to follow the choice of law rule prevailing in North Carolina, the original state of the forum. Klaxon Company v. Stentor Electric Mfg. Co., Inc., 313 U.S. 487, 61 S.Ct. 1020, 85 L. Ed. 1477 (1941); Erie R. R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Kinney maintains that the action against Kinney lies in tort. In tort actions, the law of North Carolina is *lex loci delicti* in conflict of laws situations. Shaw v. Lee, 258 N.C. 609, 129 S.E.2d 288 (1963); Petrea v. Ryder Tank Lines, Inc., 264 N.C. 230, 141 S.E.2d 278 (1965). Thus, according to Kinney, this Court should apply the

North Carolina agency requirement, and the verdict against Kinney should be set aside.

There has never been a case with this set of facts before the courts of North Carolina. When the North Carolina Supreme Court has considered a choice of law problem between motorists from two or more states, there has never been such a statute to consider.[3] Therefore, this Court has taken under advisement the words of the United States Court of Appeals for the Fourth Circuit in Lowe's North Wilkesboro Hardware, Inc. v. Fidelity Mutual Life Ins. Co., 319 F.2d 469, 472 (4 Cir. 1963), where it is said:

"There is no North Carolina case directly in point, but we must nevertheless determine the rule that the North Carolina Supreme Court would probably follow. * * *"

It is the view of this Court that the action of Kline against Kinney may be considered as an action in contract. The Court relies on Levy v. Daniels' U-Drive Auto Renting Co., 108 Conn. 333, 143 A. 163, 61 A.L.R. 846 (1928), in which the plaintiff alleged negligence. In that case the defendant, Daniels' U-Drive Auto Renting Co., rented an automobile to Sack in Connecticut. Sack operated the auto in a negligent manner in Massachusetts causing Levy to be injured. The law of Connecticut provided: "Any person renting or leasing to another any motor vehicle owned by him shall be liable for any damage to any person or property caused by the op-

McCorkle was liable, Kinney was also liable, thus reserving for decision on the motion to set aside the verdict the interesting question presented in this case.

3. North Carolina has held that a mere bailor-bailee relationship, involving a dealer in secondhand automobiles and a prospective purchaser, is insufficient, standing alone, to impose liability upon the bailor for the negligent acts of the bailee, Wilcox v. Glover Motors, Inc., 269 N.C. 473, 153 S.E.2d 76, 83 (1967), but we do not there have the public policy question applicable to situations of rental vehicles, including a particular written contract.

Automobile lessors do not require proof of ownership of a vehicle as a condition to renting a car. The submission of an operator's license is all that is necessary. Thus, as in this case as evidenced by the file which reflects that McCorkle is represented by counsel for Aetna Casualty and Surety Company under an uninsured motorist provision of a policy issued to plaintiff's mother, McCorkle was without coverage other than through Kinney's lease agreement and its insurance coverage. Plaintiff, as a pedestrian on the North Carolina highway, was entitled to the contractual benefits of the lease agreement as a matter of public policy.

eration of such motor vehicle while so rented or leased." Chapter 195, § 21, of the Public Acts of Connecticut, 1925. The complaint alleged a tortious operation of the automobile rented to Sack by the defendant, causing the injuries to the plaintiff as alleged, and constituting an action *ex delicto*. The court held that the statute of Connecticut gave to the injured plaintiff a right of action in contract against the defendant auto renting company, although the injury occurred in Massachusetts, under the theory that the contract of hiring was for the benefit of the general public who may be damaged by the operation of the leased vehicle.

In the case at hand, the New York statute made the liability of the person renting motor vehicles (Kinney) a part of every contract of hiring a motor vehicle in New York. The cause of action was created by the tort of McCorkle, but the action of Kline against Kinney is in contract. As was said in Levy v. Daniels' U-Drive Auto Renting Co., supra:

> "The contract was made in Connecticut; at the instant of its making the statute made a part of the contract of hiring the liability of the defendant which the plaintiff seeks to enforce. The law inserted in the contract this provision. The statute did not create the liability; it imposed it in case the defendant voluntarily rented the automobile. Whether the defendant entered into this contract of hiring was its own voluntary act; if he did, he must accept the condition upon which the law permitted the making of the contract. The contract was for the 'direct, sole, and exclusive benefit' of the plaintiff, who is alleged to have been injured through the tortious operation of the automobile rented by the defendant. * * *"

143 A. at 165, 61 A.L.R. at 850.

Since this action against Kinney is based in contract, the federal court must apply the North Carolina conflict of laws rules pertaining to actions in contract. In North Carolina, the law is that matters concerning a contract are determined by the law of the place of the contract. Roomy v. Allstate Insurance Co., 256 N.C. 318, 123 S.E.2d 817 (1962). In the case at hand the contract was entered into in New York, the car was picked up and returned to New York, and the driver was a resident of New York. The place of the contract was New York, and that law shall apply to this contract action, including the New York Vehicle and Traffic Law, McKinney's Consol.Laws, c. 71 § 388(1) (McKinney 1970). Therefore, we hold that Kinney's motion to set aside the verdict must be denied.

In applying this new York statute extraterritorially, the Court was somewhat concerned about the fact that the statute states, "Every owner of a vehicle used or operated *in this state* * * *," the New York Vehicle and Traffic Law, § 388(1), *supra*. This concern was put to rest upon reading an interpretation of the phrase "in this state" by the New York Court of Appeals. In Farber v. Smolack, 20 N.Y.2d 198, 282 N.Y.S.2d 248, 252, 229 N.E.2d 36 (1967), reversing prior decisions of New York courts, the New York Vehicle and Traffic Law, § 388(1), *supra*, was held applicable to an accident in North Carolina not excepting the fact that the statute referred to vehicles "in this state." The phrase referred to the public highways of New York, including the secondary roads, and was not made to limit the statute to the State of New York. See also: Miller v. Miller, 22 N.Y.2d 12, 290 N.Y.S.2d 734, 237 N.E.2d 877, 881, fn. 2 (New York).

Defendant McCorkle, in attacking the jury verdict, asserts that the plaintiff cannot avail himself of the doctrine of last clear chance in this situation. The Court's charge on the last clear chance doctrine was a correct statement of the North Carolina law. Wade v. Jones Sausage Company, 239 N.C. 524, 80 S.E.2d 150 (1954). However, McCorkle says that the plaintiff cannot take advantage of the last clear chance doctrine because he did not plead and prove it as the North Carolina law requires. Collas v. Regan, 240 N.C. 472,

82 S.E.2d 215 (1954); Exum v. Boyles, 272 N.C. 567, 158 S.E.2d 845 (1968). Kline did not plead the last clear chance doctrine in his federal complaint because he was not required to do so under Rule 8(a) of the Federal Rules of Civil Procedure which governs pleading in the federal courts. The North Carolina requirement carries no weight in this matter of federal civil procedure. The United States District Court may be bound by the substantive law of the state in which it sits by the case of Erie Railroad Company v. Tompkins, *supra*, but it is in no way bound by any procedural law other than the Federal Rules of Civil Procedure or a federal statute.

■ McCorkle argues that Kline did not prove three of the four elements required by the North Carolina Supreme Court in Wade v. Jones Sausage Company, *supra*, in order for the plaintiff to recover under the last clear chance doctrine. However, we feel that the facts that were submitted to the jury were clearly sufficient to bring Kline within the protection of the last clear chance doctrine if the jury wished to consider this issue in that light. The defendant contends that there must be evidence pointing to the fact that she should have seen the plaintiff in his perilous position. We admit that there is no direct testimony on the fact as to what McCorkle saw or should have seen. However, we submit that if there was such exact testimony required on the elements of last clear chance, there would be no need to submit last clear chance issues to a jury. There was sufficient evidence before the jury to find for the plaintiff on the last clear chance doctrine. As a consequence, the defendant's assignment of error on this point is denied.

Defendant McCorkle assigns error on two other grounds which are devoid of merit and are denied summarily.

Since the parties agreed that interest should run from the date of the verdict, if the verdict were sustained, a judgment is this day being entered with interest from the date of verdict.