**Paul E. KLINE, Appellee,**

v.

**WHEELS BY KINNEY, INC., and Kinney National Services, Inc., Appellants.**

**No. 71–2020.**

United States Court of Appeals, Fourth Circuit.

Argued March 6, 1972.

Decided July 6, 1972.

Butzner, Circuit Judge, filed a dissenting opinion.

John W. Winston, Norfolk, Va. (Seawell, McCoy, Winston & Dalton, Norfolk, Va., on brief), for appellants.

Larry M. Topping, Newport News, Va. (Hall, Fox & Topping, Newport News, Va., on brief), for appellee.

Before HAYNSWORTH, Chief Judge, and BUTZNER and FIELD, Circuit Judges.

FIELD, Circuit Judge:

Upon the appeal in this diversity case, appellants, Kinney,[1] urge that the District Judge erred in his choice of law.

The facts are not in dispute. On August 4, 1968, Miss McCorkle, a citizen and resident of New York rented an automobile from Kinney for a period of one month. The lease agreement was executed and the vehicle which was licensed and registered in New York was delivered to McCorkle in that state. Miss McCorkle drove from New York to Nags Head, North Carolina, on a vacation trip, and on August 25, 1968, while driving the vehicle in the vicinity of Nags Head, she struck the plaintiff, Kline, inflicting serious and permanent injuries.

Kline, a citizen and resident of Virginia, instituted this action for personal injuries against McCorkle and Kinney. The action was originally filed in the Eastern District of North Carolina but the case was transferred to the Eastern District of Virginia pursuant to 28 U.S.C.A. § 1404(a). The complaint charged negligence on the part of McCorkle and further alleged that she was operating the vehicle with Kinney's permission and as its agent or employee. Kinney admitted ownership of the automobile as well as the permissive use thereof by Miss McCorkle, but denied that she was its agent or employee or that it exercised any control over the vehicle while she was in possession. The evidence was uncontradicted that Miss McCorkle was neither the agent nor an employee of Kinney, and the District Court so found. However, the case was submitted to the jury as to all of the defendants based upon the negligence of Miss McCorkle and a verdict was rendered against both her and Kinney. Thereafter, Kinney moved for judgment n. o. v., which motion was denied and this appeal followed.

Kinney's motion to set aside the verdict presented the District Court with a question of conflict of laws, and the action having been originally instituted in North Carolina, the transferee court in Virginia was required to apply the law of North Carolina including its rule on the choice of law. Van Dusen v. Barrack, 376 U.S. 612, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964); Klaxon Company v. Stentor Electric Mfg. Co., Inc., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). In tort actions North Carolina has long followed the rule that the controlling law is the *lex loci delicti*. Petrea v. Ryder Tank Lines, Inc., 264 N.C. 230, 141 S.E. 2d 278 (1965); Shaw v. Lee, 258 N.C. 609, 129 S.E.2d 288 (1963). Kinney, of course, contends that since the accident occurred in North Carolina, these cases require the application of North Carolina law. Under North Carolina law the non-present owner of a vehicle incurs

---

1. As used herein "Kinney" refers to Wheels by Kinney, Inc. and Kinney National Services, Inc.

liability under only the family purpose doctrine,[2] negligent entrustment [3] or respondeat superior; [4] and since permissive user alone will not suffice, upon the facts of this case Kline would be precluded from recovery against Kinney.

The District Judge recognized these limitations with respect to liability under the law of North Carolina, but concluded that under the circumstances of this case the law of the state of New York should control by reason of the provisions of the New York Vehicle and Traffic Law, McKinney's Consol.Laws, c. 71, § 388(1) (McKinney's Consol.Laws, c. 71, 1970), which states:

"Every owner of a vehicle used or operated in this state shall be liable and responsible for death or injuries to person or property resulting from negligence in the use or operation of such vehicle, in the business of such owner or otherwise, by any person using or operating the same with the permission, express or implied, of such owner."

While there was no specific reference to this statute in the leasing agreement between Kinney and McCorkle, the District Court determined that since the agreement was made in the state of New York the statute imposing absolute vicarious liability became a part of the contract. Following this line of reasoning the Court concluded that Kline's action against Kinney was contractual in nature and that under the law of North Carolina the law of the place of the contract should control. Roomy v. Allstate Insurance Company, 256 N.C. 318, 123 S.E.2d 817 (1962). Accordingly, the District Court held that the New York statute should apply to this case and thereunder Kinney was liable for the negligent conduct of the lessee, McCorkle.

■ In reaching this decision the District Judge relied upon the case of Levy v. Daniels' U–Drive Auto Renting Co., 108 Conn. 333, 143 A. 163 (1928); 61 A.L.R. 846. In that case Daniels had rented an automobile to one Sack in Connecticut who thereafter operated the vehicle in a negligent manner in the state of Massachusetts and injured the plaintiff, Levy. Public Acts of Connecticut, 1925, ch. 195, § 21, provides: "Any person renting or leasing to another any motor vehicle owned by him shall be liable for any damage to any person or property caused by the operation of such motor vehicle while so rented or leased." Although the complaint alleged the tortious operation of the automobile, the Connecticut court held that the injured plaintiff had a contractual right of action against the defendant renting company upon the theory that the hiring contract was for the benefit of any member of the general public who might be damaged by the operation of the leased vehicle. We are of the opinion, however, that in the disposition of the present case the District Court's reliance upon *Levy* was inappropriate. By its terms the Connecticut statute was specifically directed toward persons renting or leasing motor vehicles and, as such, could properly be considered a part of any leasing agreement executed in that state. On the other hand the New York statute is not focused on such leasing arrangements. By its terms it is designed to impose liability upon the owner of any vehicle for injuries resulting from the negligent conduct of a permissive user. It therefore becomes an integral part of the New York law of torts independent of any contractural relationship.

It is, of course, reasonably certain that if the present case were presented to a New York court, that forum would apply the law of New York. It was so applied in Johnson v. The Hertz Corp., 315 F.Supp. 302 (D.C.N.Y.1970), where the court extended the benefit of the

2. Grindstaff v. Watts, 254 N.C. 568, 119 S.E.2d 784 (1961).

3. Roberts v. Hill, 240 N.C. 373, 82 S.E.2d 373 (1954).

4. Duckworth v. Metcalf, 268 N.C. 340, 150 S.E.2d 485 (1966).

New York statute to the plaintiff residents of Massachusetts in an action against a corporate resident of New York growing out of an accident which occurred in New Jersey. The District Court observed that in the area of conflict of laws the courts of New York have adopted the "grouping of contacts theory" in an attempt to ascertain and apply the law of the state with the predominant interest in the litigation and that the statute in question expressed a policy of New York which out-weighed any interest of either Massachusetts or New Jersey.[5]

■■ With no North Carolina case directly in point, our judicial chore is to "determine the rule that the North Carolina Supreme Court would probably follow, not fashion a rule which we, as an independent federal court, might consider best." Lowe's North Wilkesboro Hdwre. v. Fidelity Mut. Life Ins. Co., 319 F.2d 469 (4 Cir. 1963). Since the tortious conduct and resultant injury occurred in North Carolina, we think unquestionably a court of that state would apply North Carolina law. The North Carolina courts have adhered steadfastly to the principle of *lex loci delicti*, although urged to adopt a more flexible rule. In Shaw v. Lee, supra, the North Carolina court applied the restrictive law of Virginia and denied recovery in a case involving interspousal liability despite the fact that the plaintiff was a resident of North Carolina and would have been vested with a cause of action under the statutory law of that state. After reviewing its line of decisions the court stated (129 S.E.2d 293):

"To depart from the principles on which those cases were based will open the door to a multitude of claims founded on the assertion that the law of the *lex domicilii* is more equitable and just than the *lex loci*—justifying the application of our substantive law instead of the *lex loci*. We do not deem it wise to voyage into such an uncharted sea, leaving behind well established conflict of laws rules."

Similarly, in Petrea v. Ryder Tank Lines, Inc., *supra*, the court was urged to adopt the "grouping of contacts theory," but elected to stand firmly on its position as stated in the *Shaw* case.

Under the circumstances we are of the opinion that the District Court improperly applied the law of New York to this case, and erred in its denial of Kinney's motion for judgment n. o. v.[6]

Reversed

BUTZNER, Circuit Judge (dissenting):

The tort aspects of this controversy can be recounted quite briefly. McCorkle, a New York resident, while intoxicated ran down Kline, a Virginian, at the edge of a road near Nags Head, North Carolina. Applying North Carolina tort law, the jury found that McCorkle was negligent and awarded Kline $52,000 for his severe injuries. Unquestionably, the tort issues were properly decided under North Carolina law, the place where the accident occurred, Petrea v. Ryder Tank Lines, Inc., 264 N.C. 230, 141 S.E.2d 278 (1965); Shaw v. Lee, 258 N.C. 609, 129 S.E.2d 288 (1963), and no appeal of them has been noted.

Kinney, the company that rented a car to McCorkle, contends that under North Carolina tort law it is not liable for

5. This decision of the District Court is not, of course, conclusive on the New York choice of law question. The New York State courts might well interpret this statute as designed only to protect New York citizens and others on New York highways and decline to give it extraterritorial effect.

6. The subject lease agreement states that the vehicle and customer are covered by a liability insurance policy covering bodily injury and property damage in combined single limits of $1,000,000 per occurrence. Nothing in this opinion, of course, precludes either Kline or McCorkle from pursuing any rights they have under the lease agreement or insurance policy against Kinney and/or its insurance carrier.

McCorkle's negligence. The flaw in this contention is that Kinney's relationship with McCorkle did not arise out of the tort. The relationship was created by the contract Kinney and McCorkle executed for the rental of the car, and it is to the contract that we should look to ascertain Kinney's responsibility. I agree with the district judge that the rental agreement imposes liability on Kinney. Kline v. McCorkle, 330 F.Supp. 1089 (E.D.Va.1971).

I believe the Supreme Court of North Carolina would determine a car rental company's liability for the torts of its customer by examining the terms of the contract which the parties executed for the hire of the car. This is certainly the common sense way to determine the company's liability, and it is the method followed by Levy v. Daniel's U-Drive Auto Renting Co., 108 Conn. 333, 143 A. 163 (1928), on which the district court relied. Therefore, we should apply the contracts conflict of laws rules of North Carolina. On this aspect of the case there can be no doubt. In the absence of exceptional circumstances which are not present here, see Cannaday v. Atlantic Coast Line R. R., 143 N.C. 439, 55 S. E. 836, 838 (1906), the settled North Carolina rule is that the law of the state in which the contract was made governs the rights and obligations of the parties. Roomy v. Allstate Insurance Co., 256 N.C. 318, 123 S.E.2d 817, 820 (1962).

In our case, the contract was made in New York between a New York resident and a corporation having its office and principal place of business in that state. McCorkle's journey began in New York and was to end there. In fact, the only connection between the dispute and North Carolina was the purely fortuitous site of the accident, but this is insufficient to require the application of North Carolina law to the construction of the rental agreement. On this issue, Roomy v. Allstate Insurance Co., 256 N. C. 318, 123 S.E.2d 817 (1962), is precisely in point. That case involved a dispute over the coverage of an insurance policy that had been issued in New York. Although the accident occurred in North Carolina, and an identical policy written in North Carolina would have afforded coverage, the Court applied New York law to deny coverage.

North Carolina's public policy will not be offended by following New York law. Sensible to the dangers to which the public is exposed by the operators of rented cars who may carry no insurance, the North Carolina legislature requires the lessor to carry insurance covering his own liability and that of his customers. N.C.Gen.Stat. § 20–281 (Supp. 1971). Although North Carolina's method of securing this protection differs from New York's, the public policies of both states are essentially similar.

Of course, in surveying New York law, the North Carolina Court would give initial consideration to New York's conflict of laws rules. This question, however, presents little problem for it is reasonably clear that New York would apply its own substantive law. See Babcock v. Jackson, 12 N.Y.2d 473, 240 N. Y.S.2d 743, 191 N.E.2d 279 (1963); Auten v. Auten, 308 N.Y. 155, 124 N.E.2d 99 (1954).

The next step is to interpret the Kinney-McCorkle contract in accordance with the laws of New York. Although the agreement does not recite that Kinney will assume liability for McCorkle's negligence, it imposes this liability by expressly conforming its terms to all pertinent New York statutes. Paragraph 9 of the rental contract provides in part:

"CONFLICT WITH STATE STATUTES: Notwithstanding anything herein contained, if any of the terms or conditions of this Rental Agreement conflict with the statutes of the state wherein Vehicle is rented, this Rental Agreement is hereby amended to conform to such statutes. . . ."

For our purposes, it is significant to note that the parties contracted to have their relationship determined by the law of New York, where the rental agree-

ment was made, and not the law of North Carolina, where the accident occurred. I believe the conformity clause is broad enough to amend the rental agreement by incorporating N.Y.Vehicle & Traffic Law § 388, subd. 1 (McKinney 1970), which provides in part:

"Every owner of a vehicle used or operated in this state shall be liable and responsible for death or injuries to person or property resulting from negligence in the use or operation of such vehicle, in the business of such owner, or otherwise, by any person using or operating the same with the permission, express or implied, of such owner . . . ."

This statute has been interpreted to allow the victim of the driver's negligence a direct cause of action against the owner of the car. See Plath v. Justus, 28 N.Y.2d 16, 319 N.Y.S.2d 433, 268 N.E.2d 117 (1971). Moreover, there can be no doubt that the statute embraces permissive use evidenced by a rental agreement. Cf. Continental Auto Lease Corp. v. Campbell, 19 N.Y.2d 350, 28 N.Y.S.2d 123, 227 N.E.2d 28, 29 (1967).

Were it not for the conformity clause of the rental agreement, there might be some doubt about the propriety of incorporating the statute into the contract. In Cherwien v. Geiter, 272 N.Y. 165, 5 N.E.2d 185 (1936), the Court held that this statute was not by implication incorporated into the terms of a gratuitous bailment made in New York. There a Pennsylvania resident visiting in New York lent his car to his son, who injured New York residents in an accident that occurred in New Jersey. The Court absolved the owner of liability, reasoning that the statute applied only while the motor vehicle was operated on a public highway in New York. Even so, Cherwien is not the last word on the

subject. Thirty-one years later, Farber v. Smolack, 20 N.Y.2d 198, 282 N.Y.S.2d 248, 229 N.E.2d 36, 39 (1967), expressly repudiated Cherwien's "restrictive view." New York now holds that the statute has extraterritorial effect despite its apparent restriction to operation of a vehicle "in this state." Applying the statute to a gratuitous bailment made in New York when a New York resident was injured in North Carolina, the Court said:

"Nor should we place undue emphasis on the term to which reference has been made 'in this state' in the statute. It is clear that in adding the words 'in this state' to the predecessor of subdivision 1 of section 388 . . ., the Legislature was not concerned with extraterritorial effect. It was substituting 'in this state' for the former words 'upon a public highway' in order to cover the situation of an accident on private roadways and parking lots. . . ." 229 N.E.2d at 39.

Moreover, the extraterritorial effect of the statute has been recognized even when the victim is not a New York resident. In Johnson v. Hertz Corp., 315 F.Supp. 302 (S.D.N.Y.1970), the court applied the statute when the operator of a vehicle which had been rented in New York injured a Massachusetts resident in New Jersey. Judge Tyler premised his conclusion in part upon the interplay between the statute and the extraterritorial effect the New York legislature has ascribed to its insurance laws. He noted that subdivision 4 of § 388 requires all insurance to afford coverage for the liability created by § 388, subd. 1.[1] He also pointed out that N.Y.Vehicle & Traffic Law § 311, subd. 4(a) (McKinney 1970), specifies that insurance required for vehicles registered in New York include coverage for accidents oc-

[1]. N.Y. Vehicle & Traffic Law § 388, subd. 4:

"All . . . policies of insurance issued to the owner of any vehicle subject to the provisions of this section shall contain a provision for indemnity or security against the liability and responsibility provided in this section. . . . ."

curring elsewhere in the United States.[2] Judge Tyler was undoubtedly correct in giving effect to the close relationship between the statute and New York insurance law. The reason for their inseparability is explained in Continental Auto Lease Corp. v. Campbell, 19 N.Y.2d 350, 280 N.Y.S.2d 123, 227 N.E.2d 28, 29 (1967), where the Court said:

> "Section 388 . . . imputes to the owner of a motor vehicle the negligence of one who uses or operates it with his permission for the purpose of imposing on the owner liability to an injured third party. This enactment expresses the policy that one injured by the negligent operation of a motor vehicle should have recourse to a financially responsible defendant. The owner of the automobile is the obvious candidate, for he can most easily carry insurance to cover the risk."

The New York Court of Appeals has also commented on the extraterritorial effect of the New York insurance law. Speaking of § 311, on which Judge Tyler relied, the Court observed that the legislature "has evinced commendable concern not only for residents of this State, but residents of other States who may be injured as a result of the activities of New York residents." Tooker v. Lopez, 24 N.Y.2d 569, 577, 301 N.Y.S.2d 519, 526, 249 N.E.2d 394, 399 (1969).

In light of the New York statutory scheme that links the liability of the lessor of a car with the requirement that he carry insurance, it is apparent that the parties intended that some of the rent paid by McCorkle was to provide Kinney with insurance for the risk it assumed. The agreement, moreover, allowed McCorkle no discount when she used the car outside of New York.

Therefore, we may assume that Kinney recognized that the contract would be interpreted in accordance with the laws of New York to continue its risk wherever the car was operated. I am confident that neither North Carolina nor New York would give Kinney or its insurance carrier a windfall at Kline's expense because of the fortuitous site of the accident. I would affirm the judgment of the district court.

---

2. N.Y. Vehicle & Traffic Law § 311, subd. 4(a):

> " . . . Every such owner's policy of liability insurance shall provide insurance subject to said regulation against loss from the liability imposed by law for damages, including damages for care and loss of services, because of bodily. injury to or death of any person and injury to or destruction of property arising out of the ownership, maintenance, use, or operation of a specific motor vehicle or motor vehicles within the state of New York, or elsewhere in the United States in North America or the Dominion of Canada. . . . "