846 F.2d 71
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Thomas HAGEPANOS, Margaret Hagepanos, Plaintiffs-Appellants,
v.
SHILEY, INC., Hospital Products Group, Inc., formerly known
as Howmedica, Inc., Pfizer, Inc., Defendants-Appellees.
 No. 87-3141.
 United States Court of Appeals, Fourth Circuit.
 Argued March 10, 1988.
Decided April 18, 1988.
 
 Thomas J. Dolina (John J. Nagle, III; Power & Mosner on brief) for appellants.
 Charles P. Goodell, Jr. (Richard M. Barnes, Semmes, Bowen & Semmes, David Klingsberg, Maris Veidemanis, Kaye, Scholer, Fierman, Hays & Handler on brief) for appellees.
 Before HARRISON L. WINTER, Chief Judge, and WIDENER and WILKINSON, Circuit Judges.
 PER CURIAM:
 
 
 1
 Plaintiff Thomas Hagepanos appeals the district court's dismissal of his suit against Shiley, Inc. Hagepanos sought damages for distress resulting from his knowledge that the possibility that his artificial heart valve will fail is greater than was believed at the time the valve was implanted. Because the district court correctly held that Maryland law precludes recovery based on future harm unless the harm is more likely than not to occur, we affirm its decision.
 
 I.
 
 2
 Doctors implanted a Bjork-Shiley 60 Degree Convexo-Concave Mitral Heat Valve Prosthesis in Thomas Hagepanos' heart on September 8, 1982. At that time, Shiley, the manufacturer, informed doctors that the failure rate of the heart valve was one/one hundredth of one percent (0.01%). Recent estimates, however, show that the failure rate is between 1.1% and ten percent. The 1.1% failure rate is 110 times greater than the rate originally projected by Shiley. Hagepanos' doctor has advised him that in light of the increased failure rate, he should not travel anywhere that is not within reach of a facility that can perform open heart surgery. The heart valve has not, however, malfunctioned in any way up to the present time.
 
 
 3
 Hagepanos and his wife filed this diversity suit in Maryland Federal District Court against Shiley, seeking to recover damages for emotional distress and loss of consortium. Their theories of recovery included negligence, strict liability, fraud, express warranty, and implied warranty. After an August 3, 1987 hearing, the district court granted Shiley's motion to dismiss Hagepanos' complaint. Hagepanos appeals.
 
 II.
 
 4
 Under Maryland law, a plaintiff may not recover for future damages that may result from the defendant's conduct unless the future damages are probable--i.e., more than fifty percent likely to occur. Pierce v. Johns-Manville Sales Corp., 464 A.2d 1020, 1026 (Md.1983); Davidson v. Miller, 344 A.2d 422, 427-28 (Md.1975). The Maryland Court of Appeals held that evidence relating to the possibility of a future injury whose occurrence is a possibility, but is not probable, is too conjectural for a jury to consider. Davidson, 344 A.2d at 427. Stated another way, "future complications from a malady which are not probable become a risk which the injured person must bear because the law cannot achieve justice if speculation is to be used as the basis for determining damages." Id.
 
 
 5
 This court has recognized these Maryland cases in the context of an evidentiary challenge to the exclusion of cancer evidence in an asbestos case, where a worker who had been exposed to asbestos sought to introduce evidence of the possibility that he would contract cancer in the future. We held under Maryland law that evidence of a possible future injury may not be introduced to prove damages unless there is a greater than fifty percent likelihood that the injury will occur. Lohrmann v. Pittsburgh Corning Corp., 782 F.2d 1156, 1160 (4th Cir.1986). It was on this basis that the district court dismissed the Hagepanos' complaint.
 
 
 6
 We cannot accept Hagepanos' contention that he may recover because he seeks damages not for future injury, but for the present fear that the future injury will occur. By characterizing his claim as one arising from present distress, plaintiff attempts to evade the Maryland rule by way of semantics. It is obvious that to allow recovery in this case would effectively negate the Maryland "probability" rule. At bottom, Hagepanos' claim rests on evidence of a future occurrence that is less than fifty percent likely to occur. This type of evidence cannot support a tort claim in Maryland.
 
 
 7
 A Maryland decision, though on somewhat different facts, provides further evidence that denomination of a claim as one of present mental distress has no effect on the Maryland probability rule. In Kujawa v. Baltimore Transit Company, 167 A.2d 96 (Md.1961), a mother sought to recover for mental anguish caused by the knowledge that her son might sustain future injuries resulting from an accident that the mother had witnessed. The Maryland court held that although the mother could properly recover for the anguish caused when she witnessed the accident, anguish caused by the fear of future injuries could not support recovery because the damages were "clearly too speculative." Id. at 100.
 
 
 8
 The cases discussed above provide strong evidence that Maryland would not allow the recovery Hagepanos seeks. As a federal court sitting in diversity, we must follow that evidence. Our role in determining state law is a limited one, and we must avoid the possibility of fashioning a rule on any basis other than indications of the present state of Maryland law. See, e.g., Kline v. Wheels By Kinney, Inc., 464 F.2d 184, 187 (4th Cir.1972). Here the implications for the future safety and the future development of health care products are profound, and not amenable to resolution through the venturesome exercise of our diversity jurisdiction.
 
 
 9
 The decision of the district court is hereby
 
 
 10
 AFFIRMED.