CORRENE OWEN MORTON v. CHARLES WILFORD MORTON

No. 8415DC1096

(Filed 6 August 1985)

1. **Divorce and Alimony § 30— equitable distribution—military pension**
    Federal law does not preempt state law concerning equitable distribution of military retirement pay but allows states to treat "disposable" military retirement pay as defined in 10 USCA § 1408(a)(4) as either marital or separate property. Under G.S. 50-20(a) and (b)(1), the trial court had authority to equitably distribute the husband's "disposable" military pension in a divorce action filed on or after 1 August 1983.

2. **Courts § 21.8; Husband and Wife § 10— separation agreement—implied intent to apply N. C. law—absence of acknowledgment**
    Although the parties executed a separation agreement in Maryland, the caption of the agreement reading "North Carolina Guilford County," viewed with the husband's acknowledgment before a certifying officer as required by North Carolina but not by Maryland, reveals an implied intent by the parties to apply North Carolina law to the agreement. Therefore, the separation agreement is invalid under G.S. 52-10.1 and does not bar the wife's claim for equitable distribution where it was not acknowledged by the wife before a certifying officer.

APPEAL by defendant from *J. B. Allen, Jr., Judge*. Order entered 5 July 1984 in District Court, ALAMANCE County. Heard in the Court of Appeals 8 May 1985.

*Hemric, Hemric & Elder, P.A., by H. Clay Hemric, Jr. and James F. Walker, for plaintiff appellee.*

*C. Orville Light for defendant appellant.*

BECTON, Judge.

We are asked to decide whether a percentage of the husband's military pension was properly awarded to the wife in an equitable distribution action.

The parties were married on 22 May 1952 and separated in January 1977. On 1 November 1983 the wife, Correne Owen Morton, filed this action seeking alimony *pendente lite,* permanent alimony, an absolute divorce, and an equitable distribution of the parties' marital property. The absolute divorce was granted on 19 January 1984. The wife took a dismissal with prejudice against the husband on her claims for alimony *pendente lite* and permanent alimony in March 1984. After a hearing on the equitable distribution claim in May 1984, the trial court awarded the wife whatever percentage of the husband's "disposable" military pension yields 35% of his gross military pension. From the 5 July 1984 equitable distribution order, the husband appeals. We affirm.

I

[1] The husband contends that his military pension is not subject to equitable distribution. We hold that it is.

The North Carolina Equitable Distribution Act, as codified at N.C. Gen. Stat. Secs. 50-20 and -21 (1984), was enacted in 1981 to enable an equitable distribution of the parties' marital property upon an absolute divorce. G.S. Sec. 50-20(a); *Loeb v. Loeb,* 72 N.C. App. 205, 324 S.E. 2d 33, *cert. denied,* 313 N.C. 508, 329 S.E. 2d 393 (1985); 1981 N.C. Sess. Laws Ch. 815. Under the 1981 version of the Act, vested pension and retirement rights were classified as separate property, G.S. Sec. 50-20(b)(2) (Supp. 1981). Thus, they were not subject to equitable distribution. G.S. Sec. 50-20(a) (Supp. 1981). A 1983 amendment to the Act reclassified vested pension and retirement rights as marital property. G.S. Sec. 50-20(b)(1) (Supp. 1983); 1983 N.C. Sess. Laws Ch. 758, Sec. 5. For the first time, military pensions were specifically enumerated as a vested property right: "Marital property includes all vested pension and retirement rights, including military pensions eligible under the

federal Uniformed Services Former Spouses' Protection Act." G.S. Sec. 50-20(b)(1) (Supp. 1983); 1983 N.C. Sess. Laws Ch. 758, Sec. 1. This 1983 amendment is applicable only to actions for absolute divorce filed on or after 1 August 1983. 1983 N.C. Sess. Laws Ch. 811, Sec. 1. Therefore, "military pensions eligible under the federal Uniformed Services Former Spouses' Protection Act" are subject to equitable distribution, G.S. Secs. 50-20(a) and (b)(1) (1984), if the action for absolute divorce was filed on or after 1 August 1983. The wife filed her action for absolute divorce on 1 November 1983. As a result, the husband's military pension is subject to equitable distribution.

Federal law does not preempt state law in this instance; however, the Uniformed Services Former Spouses' Protection Act (USFSPA) places certain limitations on the exercise of state law. The USFSPA recognizes that military pensions are a property interest, rather than a personal entitlement. 10 USCA Sec. 1408 (c)(1) (1983); *cf. McCarty v. McCarty*, 453 U.S. 210, 69 L.Ed. 2d 589, 101 S.Ct. 2728 (1981) (military pensions not subject to division under state law upon dissolution of a marriage). Significantly, the USFSPA authorizes state courts to treat "*disposable* retired . . . pay payable to a member [of an armed force] for pay periods beginning after 25 June 1981" as marital or separate property, depending on the local law. 10 USCA Sec. 1408(c)(1) (1983) (emphasis added).[1] "Disposable retired . . . pay" is the total monthly military pension less federal, state, and local income tax, any other debts to the federal government, and any court-ordered annuities paid to a spouse or former spouse. 10 USCA Sec. 1408(a)(4) (1983).

We conclude that the trial court had the authority to equitably distribute the husband's "disposable" military pension, as defined in 10 USCA Sec. 1408(a)(4) (1983).

II

[2] The parties executed a separation agreement on 15 January 1977, which provided, in pertinent part, that each party releases

---

1. Although the USFSPA became effective on 1 February 1983, 10 USCA § 1408(c) (1983) applies retroactively to actions pending on or after 26 June 1981, the date of the *McCarty v. McCarty* decision. *Faught v. Faught*, 67 N.C. App. 37, 312 S.E. 2d 504, *disc. rev. denied*, 311 N.C. 304, 317 S.E. 2d 680 (1984); *Smith v. Smith*, 458 A. 2d 711 (Del. Fam. Ct. 1983).

to the other all right, title and interest that he or she may now or hereafter have in any personal property whether tangible or intangible, now owned or hereafter acquired by the other. . . .

In his Answer, the husband pleaded the separation agreement in bar to the wife's claims for alimony *pendente lite*, permanent alimony and equitable distribution. On appeal, he argues that the separation agreement is valid and binding on the parties, pursuant to G.S. Sec. 50-20(d) (1984). We are not persuaded.

G.S. Sec. 50-20(d) (1984) provides:

Before, during or after marriage the parties may by written agreement, duly executed and acknowledged in accordance with the provisions of G.S. 52-10 and 52-10.1, or by a written agreement valid in the jurisdiction where executed, provide for distribution of the marital property in a manner deemed by the parties to be equitable and the agreement shall be binding on the parties.

Referring to N.C. Gen. Stat. Sec. 52-10.1 (1984), we note that a separation agreement, to be "legal, valid, and binding in all respects" under North Carolina law, "must be in writing and acknowledged by both parties before a certifying officer as defined in G.S. 52-10(b)." Here only the husband acknowledged the execution of the separation agreement before a certifying officer, in this case, a notary public. The separation agreement is, therefore, not valid and binding under North Carolina law.

However, the parties executed this separation agreement in Maryland. Normally, we would proceed to determine whether the separation agreement was valid under Maryland law. *See Cunningham v. Brown*, 51 N.C. App. 264, 276 S.E. 2d 718 (1981) (court takes judicial notice of foreign law, when foreign law governs the action); N.C. Gen. Stat. Sec. 8-4 (1981). North Carolina has long adhered to the general rule that "lex loci contractus," the law of the place where the contract is executed governs the validity of the contract. *Bundy v. Commercial Credit Co.*, 200 N.C. 511, 157 S.E. 860 (1931); *Carpenter, Baggott & Co. v. Hanes*, 167 N.C. 551, 83 S.E. 577 (1914); *Cannaday v. R.R.*, 143 N.C. 439, 55 S.E. 836 (1906); 17 C.J.S. *Contracts* Sec. 12(4) (1963). Thus, the language of G.S. Sec. 50-20(d), "by a written agreement valid in the jurisdic-

Morton v. Morton

tion where executed," merely restates the longstanding general rule. Significantly, North Carolina recognizes an important exception to the general rule. The general rule is based on the presumed intent of the parties. 17 C.J.S. *Contracts* Sec. 12(4) (1963). North Carolina case law stresses that the express or implied contrary intent of the parties rebuts the parties' presumed intent, *i.e.*, the "lex loci contractus" rule. *Bundy v. Commercial Credit Co.; Cannaday v. R.R.*

In the case at hand the parties' implied intent to apply North Carolina law is clear. The caption of the agreement reads: "North Carolina Guilford County." Furthermore, the agreement was entered into with reference to North Carolina law. One of the parties, the husband, complied with the North Carolina statutory law on execution and acknowledgment of separation agreements. He acknowledged the execution of the agreement before a notary public. Under Maryland law a separation agreement need not be acknowledged before a certifying officer to be valid and enforceable. Md. [Fam. Law] Code Ann. Sec. 8-101(a) (1984). Ordinarily, Maryland law draws no distinction between a separation agreement and a contract between two strangers. *Eckstein v. Eckstein*, 38 Md. App. 506, 379 A. 2d 757 (1978). "Absent proof of a confidential relationship between the parties, separation agreements, not disclosing any injustice or inequity on their face, are presumptively valid and the burden is on the party challenging the agreement to show its execution resulted from coercion, fraud, or mistake." *Bell v. Bell*, 38 Md. App. 10, 14, 379 A. 2d 419, 422 (1977); *Blum v. Blum*, 59 Md. App. 584, 477 A. 2d 289 (1984) (duress).

In summary, the caption of the separation agreement, viewed together with the husband's acknowledgment before a certifying officer, reveal the parties' clear implied intent to apply North Carolina law. As Professor Williston explains, "the intent which is applied is a constructive intent deduced by the court from all the circumstances of the case without necessarily giving weight to any actual intent of the parties." 15 S. Williston, *Contracts* Sec. 1792, at 382 (3d ed. 1972).

Having determined that the separation agreement was not valid and enforceable under North Carolina law and further, that the parties intended North Carolina law to govern, although the

agreement was executed in Maryland, we hold that the agreement is invalid and does not bar the wife's claim for equitable distribution.

## III

The husband's remaining assignment of error is without merit. We conclude that the trial court did not err in awarding the wife a percentage of the husband's military pension.

Affirmed.

Judges PHILLIPS and EAGLES concur.