MARTHA G. ARMSTRONG v. IVAN O. ARMSTRONG

No. 864DC748

(Filed 7 April 1987)

1. **Appeal and Error § 18— secured performance bond—failure to post—appeal not dismissed**

    The Court of Appeals refused to dismiss defendant's appeal for failure to post a secured performance bond in the amount of $7,000 where defendant did post the appeal bond of $250 required by N.C.G.S. § 1-285.

2. **Divorce and Alimony § 30; Pensions § 1— military retirement pay—marital property**

    Defendant's right to his military retirement pay was "vested" such that it could be included as marital property under N.C.G.S. § 50-20(b), yet his right to this government benefit was never so far perfected as to permit no statutory interference, and the Legislature's reclassification of defendant's military retirement pay as marital property violated neither the constitutional guarantees of due process nor the law of the land.

3. **Divorce and Alimony § 30; Pensions § 1— military retirement pay—marital property—equal protection**

    There was no merit to defendant's contention that he was denied equal protection of the laws because N.C. Const. Art. X, § 4 protects the property, including military retirement pay, of a woman but not a man, since that section expressly states that all rights accorded females by the amendment are subject to legislative regulation and limitation, and N.C.G.S. § 50-20(b) treats military retirement pay no differently whether its recipient is male or female.

4. **Divorce and Alimony § 30— equal division of marital property—findings of fact not required**

    The trial court did not abuse its discretion in ordering an equal division of marital property, including defendant's military retirement pay, though the court made no findings of fact, where the court did state in its conclusions of law that it had considered the evidence presented and the "factors enumerated in N.C.G.S. § 50-20," and the evidence did not fail to show any rational basis for the equal distribution.

APPEAL by defendant from *Martin, James N., Judge*. Order entered 14 November 1985 in District Court, ONSLOW County. Heard in the Court of Appeals 17 December 1986.

*Charles William Kafer for defendant-appellant.*

*Merritt & Stroud, by Timothy E. Merritt, for plaintiff-appellee.*

GREENE, Judge.

After a one-year separation, plaintiff brought this action on 14 May 1984 for divorce and equitable distribution of the parties' marital property. Defendant also requested absolute divorce but asserted, among other things, that N.C. Gen. Stat. Sec. 50-20(b)(1) was unconstitutionally amended in 1983 to reclassify his vested military pension as marital property. Defendant's motion to dismiss the suit because of such unconstitutionality was denied by the trial court.

The trial court heard the case without a jury. In connection with its grant of absolute divorce, the court stated in its conclusions of law that "after consideration of the evidence presented and the factors enumerated in North Carolina General Statute 50-20, the court concludes that an equal division of marital property is equitable." Based in part on his constitutional arguments and the trial court's failure to make findings on the parties' health or their relative incomes and property, defendant appealed the court's awarding plaintiff 43.5% of defendant's Marine Corps retirement pay. In connection with defendant's appeal, the trial judge required a secured performance bond in addition to an appeal bond of $250.00.

The evidence tended to show that defendant entered the Marine Corps in June 1948 where he served until his retirement in January 1969. Plaintiff and defendant married in February 1951. The parties separated on 1 April 1983 and did not reside together after that date. The parties stipulated they were married 87% of the time during which defendant's entitlement to retirement pay accrued. After his retirement, defendant went into several different businesses; however, he was eventually hospitalized in Dorothea Dix and Cherry Hospitals in 1978. The parties also stipulated defendant suffered from the psychotic disorder known

as paranoid schizophrenia. Defendant was unemployed at the time of trial. Defendant's only income was his military retirement check in the gross amount of $789.00 per month. At trial, defendant had an injured hand and had hearing aids in both ears. A psychologist testified that defendant's ability to maintain full-time employment was questionable. Defendant was 55 years old and had living expenses in the approximate amount of $1,200 each month.

At trial, plaintiff was employed and had a gross income of approximately $1,550.00 per month. Her 1984 gross income was approximately $29,000.00, out of which she testified she paid two employees' salaries. She had a checking account balance of $1,292.22 and a savings account balance of $342.82. Plaintiff also had $4,000.00 in an IRA account. Plaintiff had had bladder surgery three times. She will possibly need additional surgery resulting in her wearing an external bladder device. Her last surgery was in 1979 or 1980. Plaintiff claimed to suffer from a rare eye nerve disorder which caused her to lose vision in both eyes if she looked in a direction other than straight ahead. Her eyes were checked every three months and seemed normal at the time of trial.

The trial court found the parties' marital property included various items of personal and real property having a value of $54,511.07 on the date of their separation. In addition, the trial court equally divided, but did not value, a silver collection. Defendant's military retirement pay was neither included in the $54,511.07 valuation nor otherwise valued by the trial judge. Since the parties stipulated they were married 87% of the time defendant's entitlement to retirement pay accrued, plaintiff's marital share of defendant's retirement pay was 43.5%.

The issues before this Court are: (1) whether defendant's failure to post a secured performance bond requires dismissal of this appeal; (2) whether the Legislature's reclassification of defendant's military retirement pay as marital property unconstitutionally: (a) deprived defendant of vested property without compensation or (b) denied defendant the equal protection of the laws because of gender; and (3) whether the trial court erred in entering its equitable distribution judgment.

## I

[1]  In his appeal entry, the trial judge required the defendant post a secured performance bond in the amount of $7,000.00. Plaintiff has moved to dismiss this appeal for defendant's failure to comply with the trial court's bond requirement. Defendant does not dispute his failure to post the secured performance bond.

In a civil action, Rule 6(a) of the Rules of Appellate Procedure provides that an appellant "must provide adequate security for the cost of appeal in accordance with the provisions of G.S. 1-285 and 1-286." N.C. Gen. Stat. Sec. 1-285 states in part:

> To render an appeal effectual for any purpose in a civil cause or special proceeding, a written undertaking must be executed on the part of the appellant, with good and sufficient surety, in the sum of two hundred fifty dollars ($250.00) or any lesser sum as might be adjudged by the court . . . .

N.C. Gen. Stat. Sec. 1-286 simply requires an affidavit of worth from the surety. An appeal must be dismissed when a party does not provide the *appeal* bond ordered by the trial judge. *Lunsford v. Alexander*, 162 N.C. 528, 78 S.E. 275 (1913); Appellate Rule of Procedure 6(d). Defendant has posted his appeal bond of $250.00 as provided under N.C. Gen. Stat. Sec. 1-285. However, posting a "*secured performance* bond" is not a condition precedent to appeal under statute or appellate rules. We therefore refuse to dismiss defendant's appeal.

## II

As enacted in 1981, N.C. Gen. Stat. Sec. 50-20(b)(2) provided that "vested pension or retirement rights . . . shall be considered separate property." Effective 1 August 1983, that provision was deleted and Section 50-20(b)(1) was amended to provide that "marital property includes all vested pension or retirement rights, including military pensions eligible under the Uniform Services Former Spouse's Protection Act [hereinafter, the 'USFSPA']." The definition of marital property in Section 50-20(b)(1) was again amended effective 9 July 1985 to include "other deferred compensation rights." The USFSPA is set forth at 10 U.S.C.A. Sec. 1408 (West 1983 & Supp. 1986) and states in relevant part:

> (c)(1) Subject to the limitations of this section, a court *may treat* disposable retired or retainer pay payable to a

member for pay periods beginning after June 25th, 1981, either *as* property solely of the member or *as* property of the member and his spouse in accordance with the law of the jurisdiction of such court. [Emphasis added.]

(c)(2) Notwithstanding any other provision of law, this section does not create any right, title, or interest which can be sold, assigned, transferred, or otherwise disposed of (including by inheritance) by a spouse or former spouse.

Section 1408(c)(1) of the USFSPA simply demonstrates Congressional intent that the states legislate the marital classification of military retirement pay. *Cf. McCarty v. McCarty*, 453 U.S. 210, 223 (1982) (whether military retirement is current or deferred compensation, federal interest preempts state community property law). That Section 1408(c)(1) allows state regulation after June 25th, 1981 (the date of *McCarty*) demonstrates Congressional intent that states regulate the marital character of military retirement pay. Given this Congressional authorization, our General Assembly chose in 1983 to reclassify retirement pay as marital property if the pay was otherwise eligible under the USFSPA.

A

[2] Defendant first contends the 1983 amendment to N.C. Gen. Stat. Sec. 50-20(b)(1) constitutes a retroactive law which "deprived" him of a "vested property right" without compensation in violation of N.C. Const. art. I, sec. 19 which states in part:

No person shall be . . . in any manner deprived of his . . . property but by the *law of the land*. No person shall be denied the equal protection of the laws [.] [Emphasis added.]

Defendant contends the classification of his retirement pay as marital deprived him of vested property without compensation since defendant's benefit level would be reduced by any spousal share allowed under Section 1408(c)(1) of the USFSPA.

"Law of the land" is equivalent to the federal Fourteenth Amendment "due process of law" and federal court interpretations of the latter, though not binding, are highly persuasive in construing our own amendment. *See Bulova Watch Co., Inc. v. Brand Distr. of N. Wilkesboro, Inc.*, 285 N.C. 467, 474, 206 S.E. 2d 141, 146 (1974). While Article I, Section 19 does not expressly pro-

hibit taking property without compensation, this right is nevertheless considered a part of the "law of the land" under the amendment. *See Long v. City of Charlotte*, 306 N.C. 187, 195-96, 293 S.E. 2d 101, 107 (1982).

Defendant's contention that his right to military retirement pay is a constitutionally protected "vested property right" is simply incorrect. Defendant's right to retirement pay is a creature of federal statute, not private contract. *See Phillips v. Phillips*, 34 N.C. App. 612, 613, 239 S.E. 2d 743, 744 (1977). The entitlement and requirements for Marine Corps retirement pay are generally set forth at 10 U.S.C.A. Secs. 6321-27 (West 1959 & Supp. 1986). Such pay is computed under 10 U.S.C.A. Sec. 1401 *et seq.* (West Supp. 1986). In *U.S. v. Teller*, 107 U.S. 64, 68 (1883), the U.S. Supreme Court specifically considered military pensions and held:

> No pensioner has a vested legal right to his pension. Pensions are the bounty of the Government, which Congress has the right to give, withhold, distribute or recall, at its discretion.

*Accord, Goodley v. U.S.*, 441 F. 2d 1175, 1178 (Ct. Cl. 1971) (no vested or contractual right to military retirement pay since right is statutory); *see also Dillon v. Wentz*, 227 N.C. 117, 122, 41 S.E. 2d 202, 206-07 (1947) (where pension paid from tax funds, no vested right to pension); *Phillips*, 34 N.C. App. at 613, 239 S.E. 2d at 744 (no vested right to military retirement pay).

With respect to procedural due process guaranteed under the State and Federal Constitutions, defendant's statutory entitlement to retirement pay indeed constitutes a "property interest." *See Kizas v. Webster*, 707 F. 2d 524, 539 (D.C. Cir. 1983), *cert. denied*, 464 U.S. 1042 (1983). However, entitlement to a government benefit such as retirement pay is not an "indefeasible property right." *See Richardson v. Belcher*, 494 U.S. 78, 81 (1971) (analogy between welfare benefits and "property" does not impose constitutional limitation on congressional power to change entitlement to benefits). A legitimate entitlement does not always rise to the level of "property" protected against "taking" by the due process clauses of our State and Federal Constitutions. *Id.* As the *Kizas* Court noted:

A legitimate claim of entitlement to a government benefit does not transform the benefit *itself* into a vested right. Rather, due process property interests in public benefits are limited, as a general rule, by the governmental power to remove, through prescribed procedures, the underlying source of those benefits.

707 F. 2d at 539 (emphasis in original). In short, "public benefits are not held in fee simple." *O'Bannon v. Town Court Nursing Center*, 447 U.S. 773, 796-98 (1980) (Blackmun, J., concurring opinion).

That Congress could alter the level or computation of military retirement pay does not deprive the recipients of due process. *See Costello v. U.S.*, 587 F. 2d 424, 426 (9th Cir. 1978). Accordingly, the State of North Carolina could reclassify defendant's retirement pay as marital property under the USFSPA since defendant's due process "property interest" is not accorded the status of a "vested property right." *Cf. Fullam v. Brock*, 271 N.C. 145, 155 S.E. 2d 737 (1967) (since testamentary right is statutory, no vested right in prior version of statute).

While defendant's property interest in his military retirement pay is not immune to legislative modification or abolishment, his interest in his military retirement pay is of course protected against arbitrary governmental action. Thus, "Congress may grant, increase or decrease [government] benefits subject to the due process limitations against arbitrary action that have no rational justification." *Zucker v. U.S.*, 578 F. Supp. 1239, 1243 (S.D.N.Y. 1984), *aff'd*, 758 F. 2d 637 (1985). In *Flemming v. Nestor*, 363 U.S. 603, 610-11 (1960), the United States Supreme Court held an alien had no "accrued interests" in Social Security benefits such that every defeasance would constitute a prohibited deprivation of property; rather, the alien's interest was protected by due process only against a statute which "manifests a patent arbitrary classification, utterly lacking in rational justification." 363 U.S. at 612. In *Sawyer v. Sawyer*, 54 N.C. App. 141, 282 S.E. 2d 527 (1981), we specifically held the State has paramount power to regulate divorce and amend its divorce laws without violating guarantees of due process. Given the state's legitimate interest in equitable distribution, defendant has failed to persuade us our Equitable Distribution Act is patently arbitrary and without rational justification.

YALE LAW LIBRARY

We note in passing that defendant cites our decision in *Morton v. Morton*, 76 N.C. App. 295, 332 S.E. 2d 736, *disc. rev. denied*, 314 N.C. 667, 337 S.E. 2d 582 (1985), for the proposition that defendant's military retirement pay constitutes a "vested property right." In *Morton*, we stated:

> For the first time, military pensions were specifically enumerated as a vested property right: marital property includes all vested pension and retirement rights, including military pensions eligible under the federal Uniform Services Former Spouse's Protection Act. G.S. Sec. 50-20(b)(1) (Supp. 1983).

76 N.C. App. at 296-97, 332 S.E. 2d at 737. *See also Seifert v. Seifert*, 82 N.C. App. 329, 333, 346 S.E. 2d 504, 506 (1986) (noting military pension "vests" after prescribed age and service under federal statutes). That N.C. Gen. Stat. Sec. 50-20(b) treats military retirement pay as a "vested" pension right is permitted, but not required, under 10 U.S.C.A. Sec. 1408(c)(1). However, there is no contradiction in viewing defendant's interest in his retirement pay as "vested" for purposes of equitable distribution, but not constitutionally "vested" against subsequent legislative amendment. Whether a right is vested or not is often a statement of legal conclusion, not legal fact. As Justice (now Chief Justice) Exum stated in *Gardner v. Gardner*, 300 N.C. 715, 719, 268 S.E. 2d 468, 471 (1980):

> "Vested" rights may not be retroactively impaired by statute; a right is "vested" when it is so far perfected as to permit no statutory interference. The tautology is apparent.

Accordingly, we hold defendant's right to his retirement pay was "vested" such that it could be included as marital property under Section 50-20(b), yet his right to this government benefit was never "so far perfected as to permit no statutory interference." The Legislature's reclassification of defendant's military retirement pay as marital property violated neither the Constitutional guarantees of due process nor the law of the land.

B

[3]   Defendant also argues that N.C. Const. art. X, sec. 4 operates to require a female's military retirement pay be classified under

Section 50-20 as her separate property. Article X, Section 4 states in part:

> The real and personal property of any female in this state acquired before marriage, and all property, real and personal, to which she may, after marriage, become in any manner entitled, shall be and remain the sole and separate estate and property of such female, and shall not be liable for any debts, obligations, or engagements of her husband, and may be devised and bequeathed and conveyed by her, *subject to such regulations and limitations as the General Assembly may prescribe*. [Emphasis added.]

Since defendant's retirement pay enjoyed no such alleged constitutional protection, defendant argues he has been denied equal protection of the laws because, as a male, he is not protected by Article 10, Section 4.

However, Article X, Section 4 expressly states that all rights accorded females by the amendment are subject to legislative regulation and limitation. *See generally Fullam*, 271 N.C. at 150, 155 S.E. 2d at 741 (summarizing legislative history of amendment). The historical context of the Article makes clear that wives were simply accorded rights in their property similar to those rights husbands already enjoyed in their own property. *See Turlington v. Lucas*, 186 N.C. 283, 290, 119 S.E. 366, 370 (1923). Whatever the remedial purpose of the amendment, it is by its own terms subject to limitations prescribed by the General Assembly, including any statutory classification and distribution of property under the Equitable Distribution Act. Under Section 50-20(b) of that Act, military retirement pay is treated no differently whether its recipient is male or female.

We therefore reject defendant's equal protection and due process claims as meritless.

### III

In applying our equitable distribution statutes, the trial court must follow a three step procedure: (1) classification; (2) evaluation; and (3) distribution. *See Cable v. Cable*, 76 N.C. App. 134, 137, 331 S.E. 2d 765, 767, *disc. rev. denied*, 315 N.C. 182, 337 S.E. 2d 856 (1985). Since we have determined the marital classification of defendant's retirement pay is constitutional, no classification

issue remains. Furthermore, neither party objects to the values assigned by the trial judge.

**[4]** However, defendant objects to the equal distribution of the parties' marital property. In *White v. White*, 312 N.C. 770, 324 S.E. 2d 829 (1985), the trial court had specifically determined that equal distribution of the parties' marital property was equitable under Section 50-20. In affirming the trial court, our Supreme Court concluded the equitable distribution statute does more than create a presumption that equal division is equitable:

> Instead, the statute is a legislative enactment of public policy so strongly favoring the equal division of marital property that an equal division is made mandatory "unless the court determines that an equal division is not equitable." N.C.G.S. 50-20(c). The clear intent of the legislature was that a party desiring an unequal division of marital property bear the burden of producing evidence concerning one or more of the twelve factors in the statute and the burden of proving by a preponderance of the evidence that an equal division would not be equitable. Therefore, if no evidence is admitted tending to show that an equal division would be inequitable, the trial court *must* divide the marital property equally. [Emphasis in original.]
>
> *When evidence tending to show that an equal division of marital property would not be equitable is admitted,* however, *the trial court must exercise its discretion in assigning the weight each factor should receive in any given case.* It must then make an equitable division of the marital property by balancing the evidence presented by the parties in light of the legislative policy which favors equal division. [Emphasis added.]

*Id.* at 776-77, 324 S.E. 2d at 832-33; *see also Harris v. Harris*, 84 N.C. App. - - -, 352 S.E. 2d 869, 872 (1987) (to determine if equal division is inequitable, court must consider factors set forth at Section 50-20(c) ).

In the instant case, the trial court admitted evidence tending to show an equal division of marital property would not be equitable under Section 50-20(c): 1) with respect to income, plaintiff was employed with a gross monthly income of $1,550.00;

defendant was unemployed, his only income being his monthly military retirement benefit of $789.00; 2) with respect to health, plaintiff has had bladder surgery three times, may require a bladder bag in the future, and additionally has substantial eyesight difficulties; defendant suffers from paranoid schizophrenia, probably cannot work and wears hearing aids in both ears; 3) with respect to assets on the date of the hearing, plaintiff had $4,000.00 in an IRA account, $1,292.22 in a checking account and $342.82 in a savings account; defendant had no assets other than the marital property; 4) with respect to expenses, defendant offered an exhibit setting forth his monthly living expenses of $1,147.09. Although there was testimony on plaintiff's expenses, this Court cannot determine from the record their amount.

If a party offers evidence tending to show an equal distribution is inequitable in light of the factors enumerated by Section 50-20(c), the court must under *White* and *Harris* assign each factor its proper weight. The court must then balance the evidence favoring each factor against the strong legislative policy favoring equal division of marital property. The trial judge is vested with great discretion to judge these factors and appellate review is limited to determining whether the court has clearly abused its discretion:

> A trial court may be reversed for abuse of discretion only upon a showing that its actions are manifestly unsupported by reason. A ruling committed to the trial court's discretion is to be accorded great deference and will be upset only upon a showing that it was so arbitrary that it could not have been the result of a reasoned decision.

*White*, 312 N.C. at 777, 324 S.E. 2d at 833 (citation omitted).

We must consider whether the trial judge properly considered defendant's evidence in connection with the factors set forth in Section 50-20(c). The trial court made no findings which would demonstrate it considered the relevant factors. It did state in its conclusions of law that it had considered the evidence presented and the "factors enumerated in North Carolina General Statute 50-20." That portion of the Court's order, though designated a "conclusion of law," is a finding of fact. Despite its generality, this finding indicates the trial judge considered the evidence relevant to the factors set forth in Section 50-20(c). *See Hartman v. Hart-*

*man*, 82 N.C. App. 167, 178, 346 S.E. 2d 196, 202, *disc. rev. denied*, 318 N.C. 506 (1986).

On several occasions, this Court has held that, when the trial judge ultimately determines an equal division is equitable, the judge need not make findings on the statutory and nonstatutory factors. *E.g., Hartman; Andrews v. Andrews*, 79 N.C. App. 228, 338 S.E. 2d 809, *disc. rev. denied*, 316 N.C. 730, 345 S.E. 2d 385 (1986); *Weaver v. Weaver*, 72 N.C. App. 409, 324 S.E. 2d 915 (1985); *Loeb v. Loeb*, 72 N.C. App. 205, 324 S.E. 2d 33, *disc. rev. denied*, 313 N.C. 508, 329 S.E. 2d 393 (1985). Findings of fact by the trial judge are nonetheless recommended and will assist the appellate court's determination under *White* and *Harris* that the trial judge considered any evidence relevant to the factors enumerated by Section 50-20(c).

In the instant case, the trial court could have weighed the evidence differently and could have awarded defendant a larger portion of the marital property. However, when coupled with the legislative policy favoring equal division, we cannot say the evidence failed to show any rational basis under *White* for the distribution ordered by the court. Therefore, we find no abuse of discretion.

IV

Affirmed.

Judge JOHNSON concurs.

Chief Judge HEDRICK concurs in the result.