CITIBANK, SOUTH DAKOTA, N.A., PLAINTIFF-APPELLEE v. NICOLE J.B. PALMA, DEFENDANT-APPELLANT

No. COA06-1386

(Filed 3 July 2007)

**1. Creditors and Debtors— choice of law—no state law claim of usury—exception to lex loci contractus**

The trial court did not err by denying defendant's motion to amend her answer and by granting summary judgment in favor of plaintiff in an action to recover on a credit card account based on its determination that North Carolina law did not apply, because: (1) there is no state law claim of usury against a national bank based on the fact that the National Bank Act under 12 U.S.C. § 85 preempts any state usury laws; (2) whether the interest charged by plaintiff is lawful in the state in which its customer resides is irrelevant, and instead the law of the state in which plaintiff is located can be applied to determine the lawfulness of plaintiff's actions; (3) although North Carolina adheres to the general rule of lex loci contractus, the express or implied contrary intent of the parties rebuts the parties' presumed intent; (4) the parties intended federal law and South Dakota law to govern, and plaintiff did not rebut the presumption of lex loci contractus by simply citing the North Carolina provision for attorney fees in its complaint; and (5) in light of plaintiff's attachments to its motion, plaintiff never intended to waive its contractual choice-of-law rights.

CITIBANK, S.D., N.A. v. PALMA

[184 N.C. App. 504 (2007)]

**2. Creditors and Debtors— unconscionability—usury**

The trial court did not err by denying defendant's motion to amend her answer and by granting summary judgment in favor of plaintiff in an action to recover on a credit card account even though South Dakota recognizes the doctrine of unconscionability, because: (1) in the present case, plaintiff charged interest that was expressly permitted by South Dakota law, thus establishing that the terms of the agreement were not unconscionable; and (2) although defendant attempted to assert the defense of unconscionability, this defense was actually in the nature of a defense of usury.

Appeal by Defendant from order entered 11 July 2006 by Judge Catherine C. Eagles in Superior Court, Guilford County. Heard in the Court of Appeals 9 May 2007.

*Maupin Taylor, P.A., by Camden R. Webb and Carrie Anne Orlikowski, for Plaintiff-Appellee.*

*Charles Winfree for Defendant-Appellant.*

McGEE, Judge.

Nicole J.B. Palma (Defendant) appeals from an order denying her motion to amend her answer and granting summary judgment in favor of Citibank South Dakota, N.A. (Plaintiff). We affirm.

Plaintiff filed a complaint on 25 April 2005 to recover on a credit card account. Plaintiff alleged that Defendant used a credit card obtained from Plaintiff, and that Defendant failed to pay the amount owed to Plaintiff when Plaintiff demanded payment. Plaintiff sought $19,955.03, plus interest. Plaintiff also sought attorney's fees pursuant to N.C. Gen. Stat. § 6-21.2.

Defendant filed a *pro se* answer on 23 May 2005, generally denying the allegations. Plaintiff filed a motion for summary judgment on 8 June 2006. In support of its motion, Plaintiff filed an affidavit and attached the account agreement (the agreement), as well as the account statements detailing Defendant's alleged default. The agreement states: "The terms and enforcement of this Agreement shall be governed by federal law and the law of South Dakota, where [Plaintiff] [is] located."

Defendant filed a motion on 12 June 2006 to amend her answer. Defendant proposed to raise the defenses of usury and unconscion-

ability. Specifically, in support of her proposed defense of unconscionability, Defendant stated: "The fees and charges which . . . Plaintiff seeks to recover are unconscionable under applicable law." Defendant also filed an affidavit of Dr. Mark Burkey, an economist who had studied issues related to predatory lending. In his affidavit, Dr. Burkey stated "that [Plaintiff] more than doubled the credit limit on [Defendant's] account from $6,100 to $17,270 during a three-year period of time when there were 15 late payments." Dr. Burkey further stated that "[a]fter the balance significantly increased, [Plaintiff] then reduced the credit limit and approximately doubled the interest rate."

The trial court held a hearing on both motions. In an order entered 11 July 2006, the trial court denied Defendant's motion to amend and granted Plaintiff's motion for summary judgment. The trial court denied Plaintiff's motion with respect to attorney's fees. The trial court made the following findings of fact and conclusions of law:

1. The fees and interest rates allowed under the terms and conditions [of] Plaintiff's contract with Defendant are usurious and unconscionable under North Carolina law, as a matter of law. However, North Carolina law is preempted by federal law, 12 U.S.C. 85 and 12 C.F.R. 7.4001, and this Court is without discretion to rule otherwise. Therefore, the fees and interest rates shall be enforced against`. . . Defendant as a matter of law.

2. Allowing . . . Defendant to amend her Answer [would] be futile.

3. Plaintiff is entitled to judgment as a matter of law.

Defendant appeals.

I.

[1] Defendant argues the trial court erred by finding that North Carolina law did not apply. We disagree.

The National Bank Act (NBA) provides that a national bank may charge interest on loans "at the rate allowed by the laws of the State . . . where the bank is located[.]" 12 U.S.C. § 85 (2000). Section 85 "sets forth the substantive limits on the rates of interest that national banks may charge." *Beneficial National Bank v. Anderson*, 539 U.S. 1, 9, 156 L. Ed. 2d 1, 9 (2003). 12 U.S.C. § 86 "sets forth the elements of a usury claim against a national bank, provides for a 2-year statute of limitations for such a claim, and prescribes the reme-

**CITIBANK, S.D., N.A. v. PALMA**

dies available to borrowers who are charged higher rates and the procedures governing such a claim." *Id.* "In actions against national banks for usury, these provisions supersede both the substantive and the remedial provisions of state usury laws and create a federal remedy for overcharges that is exclusive, even when a state complainant, as here, relies entirely on state law." *Id.* at 11, 156 L. Ed. 2d at 10. In fact, "[b]ecause [Sections] 85 and 86 provide the exclusive cause of action for such claims, there is, in short, no such thing as a state-law claim of usury against a national bank." *Id.*

12 C.F.R. § 7.4001 (2007) provides: "The term 'interest' as used in 12 U.S.C. 85 includes any payment compensating a creditor or prospective creditor for an extension of credit, making available of a line of credit, or any default or breach by a borrower of a condition upon which credit was extended." Moreover, 12 C.F.R. § 7.4008 identifies the types of state laws that are preempted with respect to national banks' lending and other operations. With respect to non-real estate lending activities, 12 C.F.R. § 7.4008 (2007) provides, in pertinent part, as follows:

(a) *Authority of national banks.* A national bank may make, sell, purchase, participate in, or otherwise deal in loans and interests in loans that are not secured by liens on, or interests in, real estate, subject to such terms, conditions, and limitations prescribed by the Comptroller of the Currency and any other applicable Federal law.

. . .

(d) *Applicability of state law.*

    (1) Except where made applicable by Federal law, state laws that obstruct, impair, or condition a national bank's ability to fully exercise its Federally authorized non-real estate lending powers are not applicable to national banks.

    (2) A national bank may make non-real estate loans without regard to state law limitations concerning:

. . .

(iv) The terms of credit, including the schedule for repayment of principal and interest, amortization of loans, balance, payments due, minimum payments, or term to maturity of the loan, including the circumstances under which a loan may be called due and

payable upon the passage of time or a specified event external to the loan; [and]

. . .

(x) Rates of interest on loans.

Thus, it seems clear that the NBA entirely preempts any state usury laws.

In the present case, Defendant attempted to raise a usury defense alleging that Plaintiff, a national bank, assessed usurious interest rates in violation of North Carolina law. However, based on the Supreme Court's holding in *Beneficial National Bank*, a usury claim under North Carolina law does not exist against Plaintiff as a matter of law. *See Beneficial National Bank*, 539 U.S. at 11, 156 L. Ed. 2d at 10. Unless Plaintiff waived this right, only the law of the state in which Plaintiff is located can be applied to determine the lawfulness of Plaintiff's actions. It appears undisputed that Plaintiff's home state is South Dakota. Whether or not the interest charged by Plaintiff is lawful in the state in which its customer resides is irrelevant. For example, in *Marquette Nat. Bank v. First of Omaha Corp.*, 439 U.S. 299, 58 L. Ed. 2d 534 (1978), the Supreme Court held that the NBA authorized a national bank based in one state to charge its out-of-state credit card customers an interest rate on unpaid balances allowed by its home state, even though that rate was greater than that permitted by the state of the bank's nonresident customers. *Id.* at 313, 58 L. Ed. 2d at 545. Thus, the NBA completely preempts North Carolina state usury laws, and Defendant's only remedy exists under the laws of South Dakota, the state in which Plaintiff is located.

Defendant argues that Plaintiff, by citing North Carolina law regarding attorney's fees in its complaint, either elected to apply North Carolina law to the agreement, or waived its right to apply federal law or South Dakota law. We disagree.

Defendant cites *Morton v. Morton*, 76 N.C. App. 295, 332 S.E.2d 736, *disc. review denied*, 314 N.C. 667, 337 S.E.2d 582 (1985), in support of her argument that Plaintiff elected North Carolina law. In *Morton*, a husband and wife executed a separation agreement in Maryland. *Id.* at 298, 332 S.E.2d at 738. Our Court acknowledged that "North Carolina has long adhered to the general rule that 'lex loci contractus,' the law of the place where the contract is executed governs the validity of the contract." *Id.* However, North Carolina recognizes an important exception to this general rule. *Id.* at 299, 332

S.E.2d at 738. "North Carolina case law stresses that the express or implied contrary intent of the parties rebuts the parties' presumed intent, *i.e.*, the 'lex loci contractus' rule." *Id.*

In *Morton*, our Court found the parties' implied intent to apply North Carolina law to be clear based on the caption of the separation agreement that read: "North Carolina Guilford County." *Id.* Additionally, the husband "complied with the North Carolina statutory law on execution and acknowledgment of separation agreements[,]" which was more demanding than the corresponding Maryland law. *Id.* at 299, 332 S.E.2d at 738-39. Thus, the parties in *Morton* clearly intended to apply North Carolina law.

In the instant case, however, it is clear the parties intended federal law and South Dakota law to govern. The agreement expressly states: "The terms and enforcement of this Agreement shall be governed by federal law and the law of South Dakota, where [Plaintiff] [is] located." Thus, it is clear that at the time of the agreement's execution, the parties intended to apply federal law and South Dakota law. Moreover, as demonstrated by the account statements detailing Defendant's default, Plaintiff charged Defendant interest and fees in accordance with federal law and South Dakota law. We hold that simply by citing the North Carolina provision for attorney's fees in its complaint, Plaintiff did not rebut the presumption of *lex loci contractus*.

Defendant also argues Plaintiff waived its right to apply federal law or South Dakota law. "A waiver is sometimes defined to be an intentional relinquishment of a known right." *Guerry v. Trust Co.*, 234 N.C. 644, 648, 68 S.E.2d 272, 275 (1951). To constitute a waiver, "[t]he act must be voluntary and must indicate an intention or election to dispense with something of value or to forego some advantage which the party waiving it might at his option have insisted upon." *Id.* "The waiver of an agreement or of a stipulation or condition in a contract may be expressed or may arise from the acts and conduct of the party which would naturally and properly give rise to an inference that the party intended to waive the agreement." *Id.*

Although Plaintiff cited the North Carolina provision for attorney's fees in its complaint, we hold that Plaintiff did not "intentional[ly] relinquish[] . . . a known right[,]" and thus did not waive its rights under federal law or South Dakota law. *See Guerry*, 234 N.C. at 648, 68 S.E.2d at 275. In support of Plaintiff's motion for summary judgment, Plaintiff attached a copy of the agreement to its affidavit.

The agreement expressly stated that the agreement would be governed by federal law and South Dakota law. Plaintiff also attached to its affidavit all of Defendant's account statements which reflected interest and late fees calculated in accordance with federal law and South Dakota law. In light of Plaintiff's attachments to its motion, it is clear that Plaintiff never intended to waive its contractual choice-of-law rights. Thus, the trial court correctly applied federal law and South Dakota law in this matter.

Defendant also argues that North Carolina's public policy demands that we should apply North Carolina law in the present case. However, as we have already held, this matter is preempted by federal law. Therefore, we are without authority to require the application of North Carolina law. Moreover, Plaintiff neither elected to apply North Carolina law nor waived the application of federal law or South Dakota law. Therefore, this argument lacks merit. The trial court did not err by finding that North Carolina law did not apply.

II.

[2] In the alternative, Defendant argues the trial court erred by entering summary judgment for Plaintiff because South Dakota recognizes the doctrine of unconscionability. We disagree.

Defendant argues that South Dakota recognizes the doctrine of unconscionability in consumer contracts and, therefore, Defendant's proposed defense of unconscionability was not futile. Defendant cites *Durham v. Ciba-Geigy Corp.*, 315 N.W.2d 696 (S.D. 1982), as an example of the doctrine of unconscionability as it applies under South Dakota law. In *Durham*, a South Dakota farmer sued, *inter alia*, the manufacturer of an allegedly defective herbicide that had allegedly damaged his crops. *Id.* at 697. The jury determined that the defendant had breached an express warranty. *Id.* at 699. The trial court found the defendant's disclaimer of warranty and limitation of consequential damages to be unconscionable. *Id.* The Supreme Court of South Dakota affirmed, recognizing that "[o]ne-sided agreements whereby one party is left without a remedy for another party's breach are oppressive and should be declared unconscionable." *Id.* at 700-01. Therefore, the South Dakota Supreme Court held the defendant's disclaimer of warranty and limitation of consequential damages to be unconscionable and contrary to public policy. *Id.* at 701.

*Durham* is distinguishable from the instant case. Although in *Durham*, the defendant's disclaimer of warranty and limitation of

consequential damages were unconscionable, in the present case Plaintiff charged interest that was expressly permitted by South Dakota law. S.D. Codified Laws § 54-3-1.1 (Supp. 2003), provides:

> Unless a maximum interest rate or charge is specifically established elsewhere in the code, there is no maximum interest rate or charge, or usury rate restriction between or among persons, corporations, limited liability companies, estates, fiduciaries, associations, or any other entities if they establish the interest rate or charge by written agreement.

In the present case, the agreement provides that Plaintiff "may increase [Defendant's] annual percentage rates (including any promotional rates) on all balances to a default rate of up to 19.99% plus the applicable Prime Rate." Because the interest rates charged by Plaintiff were expressly permitted by the agreement and were in compliance with South Dakota law, the terms of the agreement were not unconscionable.

Moreover, in the present case, although Defendant attempted to assert the defense of unconscionability, we hold that this defense was actually in the nature of a defense of usury. Defendant characterizes her unconscionability defense as a challenge to a "pattern of systematic manipulation" by Plaintiff. However, Defendant's proposed defense only challenged the fees and charges Plaintiff sought to recover. Because it merely challenged the fees and charges, this claim was in the nature of a usury claim, which, as we have already stated, is preempted by federal law. See 12 U.S.C. § 85. Accordingly, the trial court did not err by denying Defendant's motion to amend or by entering summary judgment for Plaintiff.

Affirmed.

Judges LEVINSON and JACKSON concur.