IQVIA, Inc. v. Cir. Clinical Sols., Inc., 2023 NCBC 1.

STATE OF NORTH CAROLINA

WAKE COUNTY

IQVIA, INC.,

          Plaintiff,

v.

CIRCUIT CLINICAL SOLUTIONS, INC.,

          Defendant.

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
22 CVS 7425

**ORDER AND OPINION
ON MOTION TO DISMISS**

1. IQVIA, Inc. is a life sciences and technology company. One of its employees, Dana Edwards, resigned last year and soon after went to work for a competitor, Circuit Clinical Solutions, Inc. In this case, IQVIA alleges that Edwards is bound by noncompete and nondisclosure covenants, which Circuit Clinical induced her to breach. Circuit Clinical challenges the validity of those covenants and has moved to dismiss the complaint on that basis. For the following reasons, the Court **DENIES** Circuit Clinical's motion.

> *Williams Mullen, by Michael C. Lord and Lauren E. Fussell, for Plaintiff IQVIA, Inc.*
>
> *Fitzgerald Hanna & Sullivan, PLLC, by M. Todd Sullivan and Douglas W. Hanna, for Defendant Circuit Clinical Solutions, Inc.*

Conrad, Judge.

# I.
# BACKGROUND

2. The Court does not make findings of fact on a motion to dismiss. The following background assumes that the allegations in the complaint are true.

3. IQVIA, a Delaware corporation, provides technology and other services for clinical trials. For nearly a decade, Dana Edwards worked for IQVIA in senior positions, eventually rising to VP, Global Sales of Clinical Technology. IQVIA considered her "a key thought leader in the clinical technology field." (Compl. ¶¶ 1, 4, 42, 45, 51, ECF No. 3.)

4. In 2019, Edwards signed a Confidentiality and Restrictive Covenants Agreement. This agreement contains provisions that limit her ability to compete against IQVIA, solicit its customers and employees, and disclose its confidential information. The agreement also contains a Delaware choice-of-law provision. As alleged, Edwards agreed to these restrictions in exchange for her continued employment with IQVIA, continued access to its trade secrets and confidential information, and a new equity award of restricted stock units as part of the company's incentive and stock award plan. (*See* Compl. ¶¶ 55, 58–62, 88; Confidentiality and Restrictive Covenants Agreement §§ 1, 3, 4, 8(g), ECF No. 11.)

5. In mid-2021, Edwards announced her intent to leave IQVIA to become Circuit Clinical's Chief Commercial Officer. The move alarmed IQVIA. At first, it tried to retain Edwards. When that failed, it objected to her union with Circuit Clinical, insisting that she could not perform her new duties without violating her

noncompete and nondisclosure obligations. Despite IQVIA's objections, Edwards joined Circuit Clinical in October 2021. (*See* Compl. ¶¶ 66, 71, 73–76, 78, 80, 85.)

6. IQVIA immediately sued Edwards—but not Circuit Clinical—in Durham County Superior Court for breach of contract. Eight months later, IQVIA filed this action, alleging that Circuit Clinical wrongfully induced Edwards to breach her contractual obligations. The complaint includes claims for tortious interference with contract, unfair or deceptive trade practices under N.C.G.S. § 75-1.1, and declaratory judgment. (*See* Compl. ¶¶ 87–107.)

7. The filing of this second action set off a procedural scramble. IQVIA asked to expedite discovery. Circuit Clinical, on the other hand, pressed to stay this action altogether in deference to the first-filed action against Edwards. It also urged dismissal if the stay were denied. The Court denied expedited discovery, granted the stay, and deferred consideration of Circuit Clinical's grounds for dismissal. IQVIA has since voluntarily dismissed its claims against Edwards, effectively ending the stay. (*See* ECF Nos. 42, 44.)

8. Both parties now agree that the Court should decide Circuit Clinical's motion to dismiss, (*see* ECF No. 13), before they move on with discovery. Briefing is complete, and the Court held a hearing on 2 December 2022, at which all parties were represented by counsel. The motion is ripe.

## II.
## LEGAL STANDARD

9. A motion to dismiss for failure to state a claim "tests the legal sufficiency of the complaint." *Isenhour v. Hutto*, 350 N.C. 601, 604 (1999) (citation and quotation

marks omitted). Dismissal is proper when "(1) the complaint on its face reveals that no law supports the claim; (2) the complaint on its face reveals the absence of facts sufficient to make a good claim; or (3) the complaint discloses some fact that necessarily defeats the claim." *Corwin v. Brit. Am. Tobacco PLC*, 371 N.C. 605, 615 (2018) (citation and quotation marks omitted). In deciding the motion, the Court must treat all well-pleaded allegations as true and view the facts and permissible inferences in the light most favorable to the nonmoving party. *See, e.g., Sykes v. Health Network Sols., Inc.*, 372 N.C. 326, 332 (2019). The Court may also consider documents, such as contracts, that are the subject of the complaint. *See, e.g., McDonald v. Bank of N.Y. Mellon Tr. Co.*, 259 N.C. App. 582, 586 (2018).

III.
ANALYSIS

10. All three claims for relief are premised on allegations that Circuit Clinical induced Edwards to breach her noncompete and nondisclosure obligations. Circuit Clinical contends that the claims must be dismissed because Edwards's contractual obligations are unenforceable.

11. More specifically, Circuit Clinical contends that the contract between Edwards and IQVIA lacks consideration, an essential element of contract formation. The complaint alleges three forms of consideration: continued employment, continued access to confidential information, and an equity award of restricted stock units. Circuit Clinical concedes that each qualifies as valid consideration under Delaware law, which is the law that Edwards and IQVIA chose to govern their contract. But Circuit Clinical argues that none is valid under North Carolina law. It asks the Court

to set aside the choice-of-law provision, apply North Carolina law instead, and hold the contract unenforceable for lack of consideration.[1]

12. The Court disagrees. These arguments stray well beyond the limited scope of a motion to dismiss. They are, in form and substance, evidence-based arguments better suited to summary judgment.

13. "Perhaps the most fundamental concept of motions practice under Rule 12 is that evidence outside the pleadings—such as a document attached to a motion to dismiss—cannot be considered in determining whether the complaint states a claim on which relief can be granted." *Jackson/Hill Aviation, Inc. v. Town of Ocean Isle Beach*, 251 N.C. App. 771, 775 (2017). Here, Circuit Clinical has offered evidence—a document titled "Award Agreement," (ECF No. 11)—to show that Edwards's equity award is illusory consideration under North Carolina law. This document is reviewable only if it is the subject of the complaint and referred to in the complaint. It is neither, so the Court must disregard it. *See, e.g.*, *McDonald*, 259 N.C. App. at 586; *Bucci v. Burns*, 2018 NCBC LEXIS 37, at *7–11 (N.C. Super. Ct. Apr. 25, 2018).[2]

14. That alone is enough to deny the motion. Nothing within the four corners of the complaint suggests that the equity award is illusory under Delaware or North Carolina law, and Circuit Clinical does not argue otherwise. Accordingly, Circuit

---

[1] Circuit Clinical originally argued that the claim for declaratory judgment was deficient for failure to join Edwards as a necessary party. At the hearing, however, Circuit Clinical abandoned that argument.

[2] By contrast, the noncompete and nondisclosure agreement between Edwards and IQVIA *is* the subject of the complaint and *is* referred to in the complaint.

Clinical has not shown that the claims, as pleaded, are based on a contract that is unenforceable for lack of consideration.

15.    Nor has Circuit Clinical shown that the Court must set aside the contract's Delaware choice-of-law provision.  Our Supreme Court has endorsed the general rule "that where parties to a contract have agreed that a given jurisdiction's substantive law shall govern the interpretation of the contract, such a contractual provision will be given effect." *Tanglewood Land Co. v. Byrd*, 299 N.C. 260, 262 (1980).  Exceptions are rare.   A court may set aside a choice-of-law provision in just two narrow circumstances: first, when "the chosen state has no substantial relationship to the parties or the transaction and there is no reasonable basis for the parties' choice"; or second, when applying "the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which . . . would be the state of the applicable law" if the parties had not made a choice of law.  *Cable Tel Servs., Inc. v. Overland Contracting, Inc.*, 154 N.C. App. 639, 642–43 (2002) (quoting Restatement (Second) of Conflict of Laws § 187 (Am. L. Inst. 1971)).

16.    There is no dispute that Delaware—IQVIA's place of incorporation—has a substantial relationship to the parties.   Rather, Circuit Clinical contends that applying Delaware law would be contrary to the fundamental public policy of North Carolina.  Even if that were true, Circuit Clinical has neither argued nor shown that North Carolina has a materially greater interest in this issue than Delaware and that North Carolina law would apply absent the choice-of-law provision.  These are key

omissions. Public policy alone is no basis to disregard the parties' choice of law. *See Wachovia Bank v. Harbinger Cap. Partners Master Fund I, Ltd.*, 2008 NCBC LEXIS 6, at *30 (N.C. Super. Ct. Mar. 13, 2008) ("[B]efore this Court even considers the public policy implications of applying New York law to this dispute, it would first need to determine whether North Carolina law would apply [absent the choice-of-law provision].").

17. Indeed, it would be error to assume—as Circuit Clinical apparently does— that North Carolina's interest outweighs Delaware's. Deciding whether one State or another has a materially greater interest in a dispute is a fact-intensive inquiry, one that courts often deem ill-suited to a Rule 12(b)(6) motion. *See Jones v. Lattimer*, 29 F. Supp. 3d. 5, 10 n.3 (D.D.C. 2014) (collecting cases); *see also Caploc LLC v. Liberty Mut. Ins. Eur.*, 2021 U.S. Dist. LEXIS 115721, at *20–21 (N.D. Tex. Jun. 22, 2021). Circuit Clinical has not offered any persuasive reason to decide the issue without a more developed record.

18. And it would be error to assume—again, as Circuit Clinical apparently does—that North Carolina law would govern this contract dispute absent the choice-of-law provision. Generally, when the parties have not chosen otherwise, the law of the jurisdiction where the contract is executed governs. *See Morton v. Morton*, 76 N.C. App. 295, 298 (1985). But the complaint does not say where Edwards and IQVIA executed their agreement. It is an open question for discovery. *See Xerium Techs., Inc. v. Frank*, 2007 NCBC LEXIS 47, at *13 n.8 (N.C. Super. Ct. Jun. 21, 2007)

(discussing disputed evidence regarding "whether North Carolina law would control absent" choice-of-law provision).

19. As a result, the Court need not decide whether applying Delaware law to this dispute would be contrary to the fundamental public policy of North Carolina. Because the parties have spent the bulk of their briefs on the issue, though, it is appropriate to reiterate that "[t]he courts of North Carolina have been reluctant to find that the law of another state violates our public policy . . . ." *Lau v. Constable*, 2022 NCBC LEXIS 75, at \*17 (N.C. Super. Ct. July 11, 2022) (quoting *Torres v. McClain*, 140 N.C. App. 238, 243 (2000)); *see also Boudreau v. Baughman*, 322 N.C. 331, 342 (1988) ("This public policy exception has generally been applied in cases such as those involving prohibited marriages, wagers, lotteries, racing, gaming, and the sale of liquor."). Courts are equally reluctant to decide issues unnecessarily. Because there are at least two antecedent questions that are presently unanswerable yet must be resolved before reaching the matter of public policy, it is prudent to shelve the issue and all that it entails until the record is further developed.

## IV.
## CONCLUSION

20. For all these reasons, the Court **DENIES** the motion.

21. The parties shall file their Business Court Rule 9.2 case management report and proposed case management order on or before 20 January 2023.

**SO ORDERED**, this the 6th day of January, 2023.

                 /s/ Adam M. Conrad
                 Adam M. Conrad
                 Special Superior Court Judge
                  for Complex Business Cases