GUILFORD COUNTY DEPARTMENT OF EMERGENCY SERVICES, GUILFORD COUNTY PLANNING AND DEVELOPMENT DEPARTMENT, GUILFORD COUNTY DEPARTMENT OF HEALTH, AND GUILFORD COUNTY, PLAINTIFFS v. SEABOARD CHEMICAL CORPORATION, AND SCC OF GUILFORD, INC., DEFENDANTS

No. 9318SC419

(Filed 15 March 1994)

1. **Appeal and Error § 209 (NCI4th)— no reference to judgment appealed from—notice of appeal insufficient to vest jurisdiction in Court of Appeals**

    Defendant's notice of appeal was insufficient to vest the Court of Appeals with jurisdiction to review the trial court's 3 June 1992 order granting judgment on the pleadings for plaintiffs as to defendant's defenses and counterclaims for estoppel, laches, preemption, waiver, and preexisting, nonconforming use of property, since defendant completely omitted in its notice of appeal any reference to the 3 June 1992 judgment, and it could not be fairly inferred that defendant also intended to appeal from this judgment.

    **Am Jur 2d, Appeal and Error § 491.**

1

**GUILFORD CO. DEPT. OF EMER. SERV. v. SEABOARD CHEMICAL CORP.**

[114 N.C. App. 1 (1994)]

2. **Courts § 70 (NCI4th)— counterclaims for taking and inverse condemnation—counterclaims not raised by certiorari—jurisdiction of trial court**

The trial court erred in concluding that it lacked subject matter jurisdiction over defendant's counterclaims for taking, inverse condemnation, and violation of 42 U.S.C. § 1983 because defendant did not administratively appeal the denial of the special use permit by writ of certiorari to superior court, since review by writ of certiorari under N.C.G.S. § 153A-340 does not encompass the adjudication of issues of the type raised in the counterclaim, but the superior court did have jurisdiction in an original action to entertain the counterclaims asserted by defendant.

**Am Jur 2d, Courts §§ 151 et seq.**

3. **Eminent Domain § 35 (NCI4th)— county's enforcement of hazardous waste ordinance—other beneficial or productive use of property allowed—no "taking" of property**

The trial court did not err in determining that there was no taking in violation of the Fifth or Fourteenth Amendments to the United States Constitution or the law of the land clause of the North Carolina Constitution by plaintiff county in its enforcement of its hazardous waste ordinance, since the government action of denying defendant a special use permit did not deprive defendant of all economically beneficial or productive use of defendant's property; plaintiff's ordinances allowed many uses of defendant's property both before and after its use as a hazardous waste processing site; and the costs of cleaning up the contamination caused by defendant's operations was not a factor in whether there was any economically beneficial or productive use because, even assuming defendant continued to operate a hazardous waste reclamation facility, the contamination was required to be cleaned up.

**Am Jur 2d, Eminent Domain §§ 157 et seq.**

**Supreme Court's views as to what constitutes "taking," within meaning of Fifth Amendment's prohibition against taking of private property for public use without just compensation. 89 L. Ed. 2d 977.**

GUILFORD CO. DEPT. OF EMER. SERV. v. SEABOARD CHEMICAL CORP.

[114 N.C. App. 1 (1994)]

4. **Eminent Domain § 35 (NCI4th) — plaintiff's actions not taking of property — adequate state remedy available to defendant — no claim under federal statute**

There was no merit to defendant's contention that it had a cause of action under 42 U.S.C. § 1983 because plaintiff county, in denying defendant a hazardous waste permit, deprived it of due process and property rights secured by the Fifth and Fourteenth Amendments to the United States Constitution, since plaintiff's actions did not constitute a taking under the Fifth and Fourteenth Amendments, and there existed adequate state remedies to review the decision of the county for unreasonableness, arbitrariness, and capriciousness.

**Am Jur 2d, Eminent Domain §§ 157 et seq.**

**Supreme Court's views as to what constitutes "taking," within meaning of Fifth Amendment's prohibition against taking of private property for public use without just compensation. 89 L. Ed. 2d 977.**

5. **Injunctions § 8 (NCI4th) — defendant in bankruptcy — injunction still appropriate**

There was no merit to defendant's contention that the trial court erred in granting plaintiffs' request for a permanent injunction because the issue was moot, as defendant was bankrupt and not operating except for closure and post-closure activities, since the court was unaware of the current status of defendant's bankruptcy proceedings, and the court could not say that there was not a sufficient real or immediate interest evidencing an existing controversy justifying the dissolution of the permanent injunction.

**Am Jur 2d, Injunctions §§ 39-47.**

Appeal by defendants from judgment entered 15 October 1992 in Guilford County Superior Court by Judge Howard R. Greeson, Jr. Heard in the Court of Appeals 2 February 1994.

*Guilford County Attorney's Office, by Jonathan V. Maxwell and J. Edwin Pons, for plaintiff-appellees.*

*Frazier, Frazier & Mahler, by Harold C. Mahler and Torin L. Fury, for defendant-appellants.*

GUILFORD CO. DEPT. OF EMER. SERV. v. SEABOARD CHEMICAL CORP.

[114 N.C. App. 1 (1994)]

GREENE, Judge.

SCC of Guilford, Inc., formally Seaboard Chemical Corporation, and Seaboard Chemical Corporation (Seaboard), appeal from an order signed 15 October 1992, barring their counterclaims for failing "to petition for review by the Superior Court in the nature of certiorari pursuant to G.S. 153A-340" and granting Guilford County Department of Emergency Services, Guilford County Planning and Development Department, Guilford County Department of Health, and Guilford County's (plaintiffs) request for a permanent injunction, enjoining Seaboard from using property in Guilford County (the County) as a hazardous waste or toxic substance storage facility, treatment facility, transportation facility and/or disposal facility until a special use permit under the County's Hazardous Waste Ordinance (HWO) is obtained or until the HWO is preempted by State or Federal law.

Seaboard, a North Carolina corporation, and its predecessors in interest began operating a hazardous waste reclamation and recovery processing facility in southwestern Guilford County in the 1960's located at all relevant times in an area zoned M-2 (Industrial) which permitted a wide range of manufacturing, trade, utility, and other uses. In the early 1980's, the Federal Government passed the Resource Conservation and Recovery Act (RCRA) which regulated reclamation facilities, and relevant provisions of the North Carolina Waste Management Act became effective soon thereafter. These State and Federal regulations required a two-part federal permitting process, Part A (interim) and Part B (permanent), all to be administered by the State of North Carolina. Seaboard filed for Part A interim status which is a notification requirement for facilities in existence on the date that the rules became effective acknowledging their existence. Seaboard applied for a Part B permanent permit in 1982.

In 1984, the County amended its zoning ordinance by passing the HWO which regulated hazardous waste facilities, including existing businesses, and required existing covered entities, including Seaboard, to obtain a special use permit within one year of 6 September 1984. Seaboard received a letter from James Elza (Elza), Director of the County Planning and Development Department, which states that he "hereby extends the one year and one month limitation for issuance until further review by the county is made." Elza also told Melton Jewell (Jewell), an investor in Seaboard,

GUILFORD CO. DEPT. OF EMER. SERV. v. SEABOARD CHEMICAL CORP.

[114 N.C. App. 1 (1994)]

that no special use permit was required as long as Seaboard was making a good faith effort toward obtaining its Part B permit.

On 22 April 1987, the County passed the Watershed Critical Area Protection District Ordinance (WCA ordinance) setting forth restrictions on certain activities located in the watershed critical area (WCA) in an effort to protect existing and proposed reservoirs from water quality degradation. The WCA ordinance prohibited the use of "hazardous waste storage or treatment" in the WCA. County ordinance Section 2-8 states that "[i]t is the intent of the ordinance to permit these nonconformities to continue but to discourage their continued use." Therefore, if Seaboard's use of the property was discontinued, it would not be permitted to store or treat hazardous waste within the WCA.

In the fall of 1987, Seaboard wished to build a roof over the containment area at the Seaboard plant. The County Board approved installation of the roof; however, a dispute arose over the location of a firewall within the area covered by the roof. The State Building Code Council settled this dispute, and the County issued Seaboard a building permit on 15 September 1987. Seaboard wished to deviate from the approved design of the firewall, but this request was denied by County officials on 14 October 1988. At this time, the Guilford County Planning Department Director told Seaboard it would have to apply for a special use permit under the HWO. On 5 December 1988, the County Attorney sent Seaboard a letter indicating that Seaboard was in violation of a number of provisions of the Guilford County Fire Code and Building Code and the HWO and that a lawsuit would be filed if it had not complied with the County Ordinances by 5 January 1989. On 16 December 1988, after Seaboard applied for a special use permit, plaintiffs directed Seaboard to apply for waivers from the HWO, which Seaboard did on 29 December 1988. Seaboard was successful in correcting the fire and building code violations, but was not successful in meeting the requirements of the HWO or the State's Part B Permit under RCRA.

On 13 January 1989, plaintiffs filed a complaint in Guilford County Superior Court against Seaboard for alleged violations of the County Fire Code, Building Code, the HWO, and the Part B Permit requirement and a motion for a preliminary injunction restraining Seaboard from further operations until the violations were remedied and a special use permit was obtained. Seaboard

6          IN THE COURT OF APPEALS

GUILFORD CO. DEPT. OF EMER. SERV. v. SEABOARD CHEMICAL CORP.

[114 N.C. App. 1 (1994)]

sought and retained several extensions to file answer while it ap-
plied for the special use permit.

In late January 1989, the County began its process of hearings,
and the County Advisory Board of Environmental Quality made
negative recommendations to the County Planning Board. On 10 May
1989, the Planning Board held a public hearing and recommended
denial of the special use permit. Following a full quasi-judicial hear-
ing before the Board of County Commissioners on 25 June 1989
and 29 June 1989 and a public hearing on 26 June 1989, the Board
of County Commissioners denied Seaboard's requests for waivers
from the provisions of the HWO and denied the special use permit
on the grounds that the operation of a facility violated the HWO
because it was (1) in a watershed; (2) use of the property has
resulted in release of hazardous substances onto the land and into
the waters located in Guilford County; (3) history of management
shows inability to comply with applicable state, federal and county
regulations pertaining to public health and safety; and (4) the use
violates several provisions of the Guilford County Zoning Ordinance.

On 18 August 1989, Seaboard filed an answer to plaintiffs'
complaint and asserted the defenses of preemption, estoppel, pre-
existing use of property, and waiver and asserted compulsory
counterclaims for (1) taking of private property for public use without
just compensation; (2) inverse condemnation under N.C. Gen. Stat.
§ 40A-51; (3) violation of due process; (4) equitable estoppel and
laches; and (5) a violation of 42 U.S.C. § 1983. On 15 November
1989, plaintiffs made a motion for judgment on the pleadings pur-
suant to Rule 12(c) of the North Carolina Rules of Civil Procedure.

The State formally denied Seaboard a Part B permit on 15
November 1989; therefore, Seaboard was involved in a seven year
application process without ever qualifying for the Part B permit.
In December 1989, Seaboard filed for bankruptcy under Chapter
11 which was converted to Chapter 7 on 7 February 1990. On
31 January 1992, the Bankruptcy Court transferred the right to
prosecute the counterclaims for inverse condemnation against plain-
tiffs to Jewell and James E. Reittinger (Reittinger).

On 3 June 1992, Judge Albright granted partial judgment on
the pleadings for plaintiffs as to the defenses of estoppel, laches,
preemption, waiver and preexisting use of property, and the
counterclaims of violation of due process, equitable estoppel, and
laches, but denied plaintiffs' motion under Rule 12(c) as to Seaboard's

GUILFORD CO. DEPT. OF EMER. SERV. v. SEABOARD CHEMICAL CORP.

[114 N.C. App. 1 (1994)]

counterclaims for a taking of private property for public use without just compensation, inverse condemnation pursuant to N.C. Gen. Stat. § 40A-51, and the 42 U.S.C. § 1983 claim. The case was tried before the Honorable Howard R. Greeson, Jr. at the 7 September 1992 Guilford County Superior Court civil session.

Seaboard's expert, John M. McCracken (McCracken), who is in the real estate appraisal and consulting business, testified that the value of Seaboard's property, if it did not have contamination, was $700,000.00, that "the property had . . . [no] other viable uses" besides a waste disposal business "due to the nature of the surrounding area," and that "[t]he other uses were not economically feasible after June 30, 1989 because of . . . the contamination that existed on the property." McCracken also stated that "if you take all of the contamination out of the picture, one would expect M-2 property in Guilford County in this type and location [as Seaboard's property] to sell for between $20,000.00 and $29,000.00 per acre," but "because the cost of cleanup exceeds any reasonable value of the property for any use other than as a hazardous waste facility," "the Seaboard property, other than as a hazardous waste facility, has a value of zero dollars an acre." McCracken, however, did not explore what the value of Seaboard's property might have been to the City of High Point as a nonhazardous recyclable facility.

William Meyer (Meyer), Division Director for the Division of Solid Waste Management at the Department of Environment, Health and Natural Resources for the State of North Carolina, testified for Seaboard. He stated that "[t]he groundwater at Seaboard is grossly contaminated," "the State found materials that are toxic organics that were 1,000 times higher than the concentration allowed in drinking water," "it might cost several million dollars to clean up the groundwater at the Seaboard Chemical site," "[t]his groundwater would be required to [be] cleaned up whether or not Seaboard remained in operation," and "even if you left . . . [the Seaboard site] as a hazardous waste facility, you would still have to remediate that superficial area to the extent that workers on the site would not be unduly exposed due to the concentrations you leave." Meyer also stated that "[i]f Seaboard had been issued the Special Use Permit by the County, Seaboard would still be required to clean up the site, including the groundwater, in order to keep using it as a hazardous waste facility." He explained that "[p]art of the denial letter in 1989 was to put Seaboard on notice that it was required to submit a post-closure and corrective action

GUILFORD CO. DEPT. OF EMER. SERV. v. SEABOARD CHEMICAL CORP.

[114 N.C. App. 1 (1994)]

permit application. What Seaboard was denied was an operational permit. Seaboard was still required to clean up the groundwater and to decontaminate the closed site." In addition, the State decided that the generators that used Seaboard's sites "will proceed to clean the site up, using the generators' funds to sufficiently clean the site up, decontaminate it and address the groundwater contamination problem." "The hazardous waste rules themselves require that the site be decontaminated to the extent that, for whatever in-use you choose, it makes a standard that will protect the in-use."

Elza testified for plaintiffs that Seaboard's property was zoned M-2 so that there were 54 permitted uses in 1988, 1989, 1990 and 1991 under the ordinance effective until 31 December 1991, and there were 150 permitted uses of Seaboard's property under the present ordinance. Elza also stated that "[a] bakery is an allowable use under Seaboard's property. The contamination of the site does not have to do with whether or not the use can be put on that site, if you put a bakery there." He also stated that "Seaboard could also have applied for a new Special Use Permit under different conditions after a year, which Seaboard did not do."

By judgment dated 15 October 1992, the trial court concluded that Seaboard's counterclaims were not barred by the statute of limitations and the assignment of Seaboard's inverse condemnation claims to Jewell and Reittinger were not invalid under North Carolina law. The trial court also held it lacked jurisdiction to consider Seaboard's counterclaims because it had not administratively appealed the denial of the special use permit under HWO by writ of certiorari to Superior Court and if it had jurisdiction over the counterclaims, then no taking occurred by plaintiffs' actions in enforcing the HWO, and the evidence did not support counterclaims for inverse condemnation or a 42 U.S.C. § 1983 action. The trial court entered a permanent prohibitory injunction against use of Seaboard's site as "a hazardous waste or toxic substance storage facility, treatment facility, transportation facility and/or disposal facility" unless the special use permit required by the HWO is first obtained. Seaboard's notice of appeal dated 16 November 1992 stated that "Seaboard . . . give[s] Notice of Appeal . . . from the Judgment entered on October 15, 1992 . . . ."

---

The issues presented are whether (I) Seaboard's notice of appeal was sufficient to vest this Court with jurisdiction to review

GUILFORD CO. DEPT. OF EMER. SERV. v. SEABOARD CHEMICAL CORP.

[114 N.C. App. 1 (1994)]

the 3 June 1992 order granting judgment on the pleadings for plaintiffs as to Seaboard's defenses and counterclaims for estoppel, laches, preemption, waiver, and preexisting, nonconforming use of property; (II) the trial court erred in concluding that it lacked subject matter jurisdiction over Seaboard's counterclaims; (III) plaintiffs' actions in enforcing the HWO constituted a "regulatory taking" of private property in violation of the 5th and 14th Amendments to the United States Constitution, the "law of the land" clause of the North Carolina Constitution, and 42 U.S.C. § 1983; and (IV) the trial court erred in granting plaintiffs' request for a permanent injunction.

I

[1] "Proper notice of appeal requires that a party 'shall designate the judgment or order from which appeal is taken . . .'." N.C.R. App. P. 3(d) (1993); *Von Ramm v. Von Ramm*, 99 N.C. App. 153, 156, 392 S.E.2d 422, 424 (1990), and this Court cannot waive the jurisdictional requirements of Rule 3 if they have not been met. *Torres v. Oakland Scavenger Co.*, 487 U.S. 312, 317, 101 L. Ed. 2d 285, 291 (1988); *Von Ramm*, 99 N.C. App. at 156, 392 S.E.2d at 424. "[A] mistake in designating the judgment, or in designating the part appealed from if only a part is designated, should not result in loss of the appeal as long as the intent to appeal from a specific judgment can be *fairly inferred* from the notice and the appellee is not misled by the mistake." *Smith v. Independent Life Ins. Co.*, 43 N.C. App. 269, 274, 258 S.E.2d 864, 867 (1979) (emphasis added).

In this case, because Seaboard completely omitted in its notice of appeal any reference to the 3 June 1992 judgment granting a partial judgment on the pleadings in favor of plaintiffs on Seaboard's defenses and counterclaims of estoppel, laches, preemption, waiver, and preexisting, nonconforming use of property, it cannot be "fairly inferred" that Seaboard also intended to appeal from this judgment. As such, this Court only has jurisdiction to review the appeal of the trial court's 15 October 1992 order. *See Von Ramm*, 99 N.C. App. at 157, 392 S.E.2d at 425 (notice of appeal from order denying motion to set aside earlier child support order referred only to denial to set aside and did not present underlying judgment for review); *Chapparal Supply v. Bell*, 76 N.C. App. 119, 331 S.E.2d 735 (1985) (appeal of denial of Rule 60 motion to set aside entry of summary judgment did not include appeal of underlying sum-

GUILFORD CO. DEPT. OF EMER. SERV. v. SEABOARD CHEMICAL CORP.

[114 N.C. App. 1 (1994)]

mary judgment); *Brooks, Comm'r of Labor v. Gooden*, 69 N.C. App. 701, 318 S.E.2d 348 (1984) (notice of appeal from judgment of contempt did not infer intent to appeal from subsequent judgment dismissing counterclaim).

## II

[2]   Under N.C. Gen. Stat. § 153A-340, every decision of a county board of commissioners to issue or deny a special use permit "shall be subject to review by the superior court by proceedings in the nature of certiorari." N.C.G.S. § 153A-340 (1991). Plaintiffs argue in their brief that because Seaboard failed to raise the issues of taking, inverse condemnation, and violation of 42 U.S.C. § 1983 by certiorari pursuant to Section 153A-340, they are estopped from raising such issues in the superior court. We disagree.

The scope of review for a court reviewing a decision under Section 153A-340 includes:

(1) Reviewing the record for errors in law,

(2) Insuring that procedures specified by law in both statute and ordinance are followed,

(3) Insuring that appropriate due process rights of a petitioner are protected including the right to offer evidence, cross-examine witnesses, and inspect documents,

(4) Insuring that decisions of town boards are supported by competent, material and substantial evidence in the whole record, and

(5) Insuring that decisions are not arbitrary and capricious.

*Concrete Co. v. Board of Comm'rs*, 299 N.C. 620, 626, 265 S.E.2d 379, 383, *reh'g denied*, 300 N.C. 562, 270 S.E.2d 106 (1980) (scope of review under Section 160A-388(e) for town decisions on conditional use permits which contains identical language to Section 153A-340). Thus, review pursuant to writ of certiorari under Section 153A-340 does not encompass the adjudication of issues of the type raised in the counterclaim, that is, whether the denial of the special use permit constitutes a taking without the payment of just compensation, inverse condemnation or a violation of 42 U.S.C. § 1983. *See Batch v. Town of Chapel Hill*, 326 N.C. 1, 387 S.E.2d 655, *cert. denied*, 496 U.S. 931, 110 L. Ed. 2d 651 (1990) (petition for writ of certiorari to review decision of town denying subdivision

IN THE COURT OF APPEALS 11

GUILFORD CO. DEPT. OF EMER. SERV. v. SEABOARD CHEMICAL CORP.

[114 N.C. App. 1 (1994)]

application improperly joined with cause of action alleging constitutional violations pursuant to 42 U.S.C. §§ 1983 and 1988, and N.C.G.S. § 40A-8); *Sherrill v. Town of Wrightsville Beach*, 76 N.C. App. 646, 334 S.E.2d 103 (1985) (issue of whether zoning ordinance was unconstitutional as to plaintiff not properly before this Court because Board only had authority to grant or deny permit, and superior court, and this Court, had statutory power only to review issue of whether variance was properly denied).

Accordingly, the superior court would not have had jurisdiction to adjudicate the counterclaims asserted by Seaboard had they been raised by certiorari pursuant to Section 153A-340. The superior court, however, does have jurisdiction in an original action to entertain the counterclaims asserted by Seaboard. N.C.G.S. § 7A-240 (1989). For these reasons, the trial court erred in determining that it lacked subject matter jurisdiction over Seaboard's counterclaims.

### III

Although the trial court erred in determining that it lacked subject matter jurisdiction to entertain Seaboard's counterclaims, we agree that plaintiffs' enforcement of the HWO did not constitute a "regulatory taking" of private property without just compensation in violation of the Fifth and Fourteenth Amendments to the United States Constitution, the "law of the land" clause of the North Carolina Constitution, and 42 U.S.C. § 1983.

*A. Seaboard's Claims under the Fifth and Fourteenth Amendments to the United States Constitution and the "Law of the Land" Clause of the North Carolina Constitution*

[3] Although the North Carolina Constitution does not expressly prohibit the taking of private property for public use without payment of just compensation, our Supreme Court has considered this fundamental right as part of the "law of the land" clause in article I, section 19 of our Constitution. *Armstrong v. Armstrong*, 85 N.C. App. 93, 97-98, 354 S.E.2d 350, 353 (1987), *rev'd on other grounds*, 322 N.C. 396, 368 S.E.2d 595 (1988). We must therefore determine whether, under the "ends-means" test employed by our Courts, the particular exercise of police power by the government, i.e., Guilford County's enforcing the HWO, was legitimate, whether the means chosen to regulate are reasonable, and "whether the ordinance was invalid because the interference with the plaintiffs' use of the property amounted to a taking." *Finch v. City of Durham*,

GUILFORD CO. DEPT. OF EMER. SERV. v. SEABOARD CHEMICAL CORP.

[114 N.C. App. 1 (1994)]

325 N.C. 352, 363, 384 S.E.2d 8, 14, *reh'g denied*, 325 N.C. 714, 388 S.E.2d 452 (1989); *Responsible Citizens v. City of Asheville*, 308 N.C. 255, 261-62, 302 S.E.2d 204, 208 (1983).

Because the legitimacy of the County ordinance and its relation to the public health and welfare are not contested, we need only address whether the ordinance is invalid because it constitutes a taking. Our North Carolina cases discuss whether or not action constitutes a taking in terms of whether the owner is left with any "practical use" and "reasonable use" of his property. *Finch*, 325 N.C. at 366, 384 S.E.2d at 15. The federal court interpretations of the federal Fifth and Fourteenth Amendments "due process of law" hold that a regulatory taking occurs only if the government action deprives the owner of all economically beneficial or productive use. *Lucas v. South Carolina Coastal Council*, --- U.S. ---, ---, 120 L. Ed. 2d 798, 815 (1992). We find that these tests are consistent and therefore analyze Seaboard's state and federal constitutional claims together. *See Finch*, 325 N.C. at 366, 384 S.E.2d at 15.

In this case, the government action of denying Seaboard a special use permit did not deprive Seaboard of "all economically beneficial or productive use." Guilford County's ordinances allowed many uses of Seaboard's property both before and after its use as a hazardous waste processing site. The costs of cleaning up the contamination caused by Seaboard's operations is not a factor in whether there is any "economically beneficial or productive use" because even assuming Seaboard continued to operate a hazardous waste reclamation facility, the contamination is required to be cleaned up. Seaboard was required to clean up ground and groundwater contamination under State and Federal laws whether or not it was in operation. Therefore, not all the loss in value of Seaboard's property resulted from the County's denial of a special use permit. Thus, the trial court did not err in determining that there was no taking in violation of the Fifth or Fourteenth Amendments to the United States Constitution or the "law of the land" clause of the North Carolina Constitution by the County in its enforcement of the HWO. Because we have determined that there was no "taking," the evidence does not support a claim under N.C. Gen. Stat. § 40A-51 for inverse condemnation since that statute requires a "taking." N.C.G.S. § 40A-51 (1984).

GUILFORD CO. DEPT. OF EMER. SERV. v. SEABOARD CHEMICAL CORP.

[114 N.C. App. 1 (1994)]

*B. Seaboard's Section 1983 Claim*

[4] Seaboard also argues it has a cause of action under 42 U.S.C. § 1983 because "Guilford County . . . deprived . . . [Seaboard] of due process and property rights secured by the Fifth and Fourteenth Amendments to the United States Constitution . . . because utilization of the property as a chemical treatment facility is the only reasonable, practical and viable use of the property," and because "[p]laintiffs' actions requiring sudden closure of Seaboard's facility are unreasonable, arbitrary and capricious." We disagree.

Because we ·have determined that the County's actions did not constitute a taking under the Fifth and Fourteenth Amendments to the United States Constitution, it necessarily follows that Seaboard does not have a Section 1983 action based on actions of the County in denying Seaboard any "reasonable, practical and viable use of the property." Furthermore, because there existed adequate state remedies to review the decision of the County for unreasonableness, arbitrariness and capriciousness, there does not exist a claim under Section 1983 on this basis. *See Parratt v. Taylor*, 451 U.S. 527, 538-39, 68 L. Ed. 2d 420, 430-31 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327, 88 L. Ed. 2d 661 (1986); *Bonner v. Coughlin*, 517 F.2d 1311, 1319 (7th Cir. 1975), *modified en banc*, 545 F.2d 565, *cert. denied*, 435 U.S. 932, 55 L. Ed. 2d 529 (1978) ("the existence of an adequate state remedy . . . avoids the conclusion that there has been any constitutional deprivation of property without due process of law").

## IV

[5] Seaboard next contends that the trial court erred in granting plaintiffs' request for a permanent injunction because the issue is moot as "Seaboard is now bankrupt and not currently operating except for closure and post-closure activities," and because the WCA ordinance now prohibits Seaboard from operating a hazardous waste facility at all because it ceased operation of a nonconforming use. We disagree.

A case is not moot where there is a "sufficient real or immediate interest evidencing an existing controversy," or a reasonable likelihood that plaintiffs would again suffer deprivation of certain rights. *Southwood Ass'n, Ltd. v. Wallace*, 89 N.C. App. 327, 329, 365 S.E.2d 700, 701 (1988); *Honig v. Doe*, 484 U.S. 305, 317-18, 98 L. Ed. 2d 686, 703 (1988).

COLLINS v. CSX TRANSPORTATION

[114 N.C. App. 14 (1994)]

Seaboard declared bankruptcy in December 1989, and its Chapter 11 Bankruptcy was converted to Chapter 7 Bankruptcy in January 1990. Because we are unaware of the current status of Seaboard's bankruptcy proceedings, we are not prepared to say that there is not a "sufficient real or immediate interest evidencing an existing controversy" justifying the dissolution of the permanent injunction. Furthermore, although the WCA may now prohibit Seaboard from storing or treating hazardous waste, the injunction issued by the trial court encompassed more than those two uses and prohibited use as a transportation or disposal facility for hazardous waste or toxic substances, establishing a "sufficient real or immediate interest evidencing an existing controversy." Therefore, the trial court did not err in granting plaintiffs' request for a permanent injunction prohibiting the operation of a hazardous waste facility on Seaboard's property until such time as Seaboard obtains a special use permit.

For these reasons, the trial court erred in determining that Seaboard's counterclaims were barred for failure to petition for writ of certiorari in the superior court pursuant to Section 153A-340. The trial court, however, did not err in determining that plaintiffs' actions did not constitute a taking or a violation of 42 U.S.C. § 1983 and in granting plaintiffs' request for a permanent injunction.

Affirmed in part, reversed in part.

Judges COZORT and ORR concur.